CHICAGO, B. & Q. R. Co. *v.* WASSERMAN and others. (Original Bill.)[1]

WASSERMAN *v.* CHICAGO, B. & Q. R. Co. (Cross-Bill.)

*(Circuit Court, D. Nebraska.* January 12, 1885.)

1. WILL—REVOCATION BY BIRTH OF CHILD—COMP. ST. NEB. P. 229, § 148.
    Where a testator devises all of his property to his wife, who is *enceinte,* and makes no mention in his will of his unborn child, on its face the will manifests no intention that such child shall not be provided for, and under the Nebraska statute such child will be entitled to the same share in the estate which he would have inherited if the father had died intestate.

2. SAME—EFFECT OF PROBATE—COMP. ST. NEB. CH. 23, § 143.
    In Nebraska the probate of a will is conclusive only as to its due execution, and does not determine the title of property claimed under it.

3. SAME—CONDEMNATION OF LAND BY RAILROAD—REMEDY OF CHILD.
    Where land in Nebraska has been condemned for right of way by a railroad company, and the award of damages paid to the widow and sole devisee of the deceased owner, whose will is revoked *pro tanto* by the subsequent birth of a child, and the estate has been settled, the rights of such child may be adjudicated in an action to quiet title instituted by the company, in which such child files a cross-bill praying that she be adjudged to be the tenant in common with the company, and a partition and accounting between them be decreed.

The original bill seeks to quiet the title of the railway company, complainant, to a portion of lots 5 and 6, in block 219, in the city of Omaha, Douglas county, in the state of Nebraska, now occupied and used by the railway company for a passenger station. The cross-bill of Anna Wasserman, an infant of the age of about 13 years, who appears by her guardian *ad litem,* prays that it be decreed that she is the owner in fee of an undivided half-interest in said real estate, and that partition thereof may be made between her and the railway company; and that an account, as between tenants in common, may be stated between the parties to the cross-bill.

The following are the agreed facts:

Andrew Wasserman died on the twenty-eighth day of June, 1870, seized of the premises in controversy, and left surviving him, his widow, Maria C., a son, Frank W. X., then five years old, and a daughter, Anna, the complainant in the cross-bill, who was born on July 7, 1870, nine days after her father's death; and these two children are the sole heirs at law of the deceased. Andrew Wasserman, the deceased, 10 days before his death, made his last will, which, after his death, was duly admitted to probate by the county court for said Douglas county, and letters testamentary issued to his widow, the executrix; and omitting the attestation, which is in legal form, the following is a copy of the will:

"I, Andrew Wasserman, of Omaha, Douglas county, Nebraska, considering the uncertainty of this mortal life, and being of sound mind and memory, do

1Reported by Robertson Howard, Esq., of the St. Paul bar.

make and publish this, my last will and testament, in manner and form following: I give and bequeath unto my beloved wife, Maria Crescentia Wasserman, all the property I possess, real estate, personal property, and moneys, goods, chattels, and property of what kind and nature it may be, and appoint my wife hereby sole executrix of this, my last will and testament; hereby revoking all former wills by me made.

"In evidence whereof, I have hereunto set my hand and seal this eighteenth day of June, one thousand eight hundred and seventy.

[L. S.] "A. WASSERMAN."

Some three years after the death of Andrew Wasserman, there was instituted in the name of the Omaha & Southwestern Railroad Company, to whose rights in the premises said Chicago, Burlington & Quincy Railway Company have succeeded, certain proceedings before the probate judge of said county, to assess the damages accruing to Maria C. Wasserman by reason of the appropriation of the premises in question for railroad purposes. The following is the record of such proceedings:

"*Maria Crescentia Wasserman* v. *Omaha & Southwestern R. R. Co.*

"*To Maria Crescentia Wasserman.* You are hereby notified that on the thirtieth day of April, 1873, at 10 o'clock A. M., on the premises herein described, commissioners will proceed to assess the damages accruing to you by reason of the appropriation for depot grounds, side tracks, and railroad purposes, by the Omaha & Southwestern R. R. Co., all that portion of lots five (5) and six, (6,) in block two hundred and nineteen, (219,) in the city of Omaha, county of Douglas, and state of Nebraska, lying south of the Union Pacific Railroad depot grounds in the said city, situate in the city of Omaha, in Douglas county, in the state of Nebraska.

"OMAHA & SOUTHWESTERN R. R. Co.,
"By CLINTON BRIGGS, its Attorney."

"Received April 18, 1873; and the next day I delivered a true copy of this notice to Maria C. Wasserman in person, in the city of Omaha, Douglas county, Nebraska. HENRY GREBE, Sheriff,
"By C. H. RYME, Deputy."

"We, the undersigned, disinterested freeholders and commissioners, residents of Douglas county, Nebraska, appointed by the probate judge of said county to appraise the damages accruing to Maria Crescentia Wasserman by reason of the appropriation of all that part of lots five (5) and six, (6,) in block two hundred and nineteen, (219,) lying south of the Union Pacific Railroad depot grounds, in the city of Omaha, in Douglas county, in the state of Nebraska by the Omaha & Southwestern Railroad Company, for depot grounds, side tracks, and railroad purposes, having been duly qualified, and having each personally examined said premises on the day and at the time mentioned in the notice hereto attached, do, at the office of said probate judge in said county, assess such damages at the sum of four thousand and five hundred dollars, ($4,500.)

"In testimony whereof, we have hereunto set our hands this fourteenth day of May, A. D. 1873, at said office in Omaha.

"E. L. EMERY,
"HENRY DURNALL,
"MILTON RODGERS,
"WILLIAM STEPHENS, Jr.,
"R. A. BROWN,
"J. R. HYDE,
"Commissioners."

"*State of Nebraska, County of Douglas—ss.:* I, Robert Townsend, probate judge in and for said county, do hereby certify that the above is the original report of the commissioners appointed to assess the damages sustained by the owner of the real estate in said report described, as therein specified; and I do further certify that said Omaha & Southwestern Railroad Company has deposited with me for said owner the sum of forty-five hundred dollars, the total amount of the said appraisement.

"Witness my hand and official seal this seventeenth day of May, 1873.
[Seal.] "ROBERT TOWNSEND, Probate Judge."

"Filed May 15, 1873.
"ROBERT TOWNSEND, Probate Judge.

"Recorded May 17, 1873, at 2:30 o'clock P. M.
"WM. H. IJANS, County Clerk."

The use of said real estate for railroad purposes was convenient and necessary for the company. The $4,500 was deposited as required by law. From said assessment of damages said Maria C. Wasserman appealed to the district court for said county, and, pending said appeal, on October 1, 1873, made a settlement with the railway company and gave the following receipt:

"*Omaha and Southwestern Railroad Company in Nebraska to Maria C. Wasserman:* For $1,525, fifteen hundred and twenty-five dollars, as money due on settlement over and above the amount allowed the said Wasserman by commissioners for the appropriation of the use of said railroad company for the following real estate, to-wit: That part of lots five and six, in block two hundred and nineteen, in the city of Omaha, and state of Nebraska, lying south of the U. P. depot grounds, for the Omaha & Southwestern Railroad Company in Omaha, adjoining the U. P. depot.

"Received fifteen hundred and twenty-five dollars, in full of the above account.                              MARIA C. WASSERMAN."

Thereupon the said appeal was dismissed. The said railroad company never received any deed of conveyance for the property so appropriated. The plaintiff, in the original bill, claims right through the foregoing proceedings. As shown by the inventory and appraisement of his estate, Andrew Wasserman left at his death personal property worth about $250, the premises in controversy, and also the east half of lot 1, in block 135, in Omaha; which last parcel his widow has since sold as her own, and conveyed to one Barker, and has received the purchase money.

The Statutes of Nebraska (see Comp. St. 229) provide as follows: "Sec. 148. When any child shall be born after the making of his parent's will and no provisions shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate, and the share of such child shall be assigned to him as provided by law in cases of intestate estate unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child."

*T. M. Marquette,* for the railroad company.
*Albert Swartzlander,* for Anna Wasserman.

BREWER, J. In this case, the primary question I am reluctantly compelled to decide in favor of the complainant Wasserman. I say reluctantly; for when a man, on the eve of death, having a child five years of age, and living with a wife to be delivered of a second child within 20 days, makes a will giving all his property to his wife, I think the common voice will say that he intended no wrong to either

the born or unborn child, but trusted to his wife—their mother—to do justice by each, and believed that she, with the property in her hands, could handle it more advantageously for herself and children than if interests in it were distributed.   As a question of fact, independent of statute, I have no doubt that Mr. Wasserman had no feeling either against the born or unborn child, but, having implicit faith in his wife, meant that she should take the entire property, and believed that out of that property and her future labors she would take care of his children.   But the legal difficulty is this: The statute says that it must be "apparent from the will that the testator intended that the unborn child should not be specially provided for.  How can any intention as to this child be gathered from the will alone?  It simply gives everything to the wife; is silent as to children. If I could look beyond the will, my conclusion would be instant and unhesitating.   Limited by the statute to the instrument itself, what can be gathered therefrom?  It is simply a devise of all property to the wife.   No reference is made to children, born or unborn.   Can I infer from its silence an intention to disinherit?  If so, the mere omissions from a will would always stand as proof of an expressed intention.   And whatever of apparent hardship there may be in the present case, a fixed and absolute rule prescribed by statute cannot, for such reason alone, be ignored.   That the rule was intentionally thus prescribed, is evident, not alone from the clear letter of the statute, but also from the history of this question at common law, and the various provisions of the statutes of other states.   At common law the will of an unmarried man disposing of all his property was presumably revoked by his subsequent marriage and the birth of a child.   This rule was borrowed from the civil law.   "*Qui filium in potestate habet, curare debet, ut eum, hæredem instituat, vel exhæredem eum nominatim faciat.*"   Just. Inst. lib. 2, cap. 13, § 5; Hadley, Introduction Roman Law, 315.   Whether revocation would follow from subsequent marriage alone, or birth of child alone, was, perhaps, a doubtful question.   In *Brush* v. *Wilkins*, 4 Johns. Ch. 506, it was held that both must concur; while in *M'Cullum* v. *M'Kenzie*, 26 Iowa, 510, the birth of a child alone was adjudged sufficient.   See, generally, upon this question, 1 Redf. Wills, c. 7; 1 Williams, Ex'rs, c. 3, § 5; 4 Kent, Comm. 421–426.   It was also, for a while at least, disputed whether such revocation followed absolutely from subsequent marriage and birth of child, or was only to be presumed, and the presumption subject to be overthrown by evidence of the testator's intentions.

Lord MANSFIELD, in *Brady* v. *Cubitt*, 1 Doug. 39, ruled that the presumption of revocation from marriage and the birth of issue, like all other presumptions, "may be rebutted by every sort of evidence." See, also, 1 Phillim, 473.   Such seems to have been generally the ruling of the ecclesiastical courts.   On the other hand, in *Holford* v. *Otway*, 2 H. Bl. 522, Chief Justice EYRE held that "in cases of revo-

cation by operation of law, the law pronounces upon the ground of a *presumptio juris et de jure* that the party did intend to revoke, and that *presumptio juris* is so violent that it does not admit of circumstances to be set up in evidence to repeal it." And in the leading case of *Marston* v. *Roe*, 8 Adol. & E. 14, by all the judges in the exchequer chamber, it was finally decided that the revocation of the will took place in consequence of a rule or principle of law, independently altogether of any question of intention of the party himself. Such being the final solution of the question in the English courts, it cannot be that the purpose of the statute in question was to open the door to any other evidence of intention than those expressly named. On this side of the waters the matter has generally been regulated by statute, with a prevailing tendency to declare that the after-born child takes the same share that it would have done if the father had died intestate; or, in other words, that the will is absolutely revoked *pro tanto*, unless there is some provision made for such child, or an express intention that it should receive nothing. The statute of Wisconsin is identical with that of Nebraska; and in *Bresee* v. *Stiles*, 22 Wis. 120, the inquiry as to testator's intentions was declared to be limited to the language of the will, and, the will being silent, the after-born child inherited. See, among many cases, the following, which show how carefully the courts have enforced the rule of revocation *pro tanto* in the interest of the child: *Waterman* v. *Hawkins*, 63 Me. 156; *Walker* v. *Hall*, 34 Pa. St. 483; *Hollingsworth's Appeal*, 51 Pa. St. 518. In the first, the testator left certain real and personal estate to his widow during her life and widowhood, to revert to his heirs upon her death or marriage, and gave the rest to his father. A daughter born two months after his death was held unprovided for by the will, and recovered the share of the estate she would have taken if he had died intestate. In the second, the testator gave his entire estate to his wife, saying in the will, "having the utmost confidence in her integrity, and believing that should a child be born to us she will do the utmost to rear it to the honor and glory of its parents;" and the same ruling was made. In the last case the will in terms committed any after-born child to the guardianship of his wife, adding, "which guardianship I intend and consider a suitable and proper provision for such child;" and still a similar decision was pronounced. Further citations would seem unprofitable.

To sum the matter up, the common-law courts of England finally reached the conclusion that the revocation was absolute upon the happening of marriage and birth of issue, and not dependent upon evidence of testator's intentions. The general tendency of statute law in this country is in the same direction, and courts, as a rule, have carefully protected the rights of the after-born children. The language of the statute is plain and unambiguous. The will makes no provision for this child, does not mention or refer to her, and on its face manifests no intention that she should be unprovided for.

Hence it must be held that she takes the same share in the estate which she would have taken had her father died intestate, to-wit, one-half.

Again, it is contended that the will was duly probated; that the probate is in the nature of a proceeding *in rem* with notice to all the world; that by it the title was vested in Mrs. Wasserman; and that any party taking the title from her without notice of the existence of any subsequently born children took good and full title. This is a mistake. The probate of a will is conclusive only as to its due execution. Comp. St. *c.* 23, p. 229, § 143; *Pettit* v. *Black*, 13 Neb. 142; S. C. 12 N. W. Rep. 841. It does not determine the title of property which is claimed under it. *Evans* v. *Anderson*, 15 Ohio St. 324. In this case the court say:

"The probate did not strengthen the title, but gave the will effect as evidence, and made it available. Who shall take the estate and who not, was not passed on by the probate court. This can only be determined by the law which declares the effect of the will. The devisee held the title under a valid will, subject to the condition imposed by the statute that the will shall become void on the birth of a subsequent child. If this child had not been born alive, it would still be good. By his birth the will became void; not by reason of an erroneous probate, or the want of any fact necessary to be proven as a foundation of that judicial sentence. The sentence is therefore immaterial. The court was not called on to impugn the sentence, but simply to declare the effect of the will in its relation to the parties." *Fallon* v. *Chidester*, 46 Iowa, 588; *Bresee* v. *Stiles*, 22 Wis. 120; 3 Redf. Wills, 61; 1 Jarm. Wills, (3d Amer. Ed.) p. 22, etc.

Here the execution of the will is not challenged. Its validity is not denied. There is no attempt to set aside the probate. But the contention is that, conceding that it was duly executed and properly probated, and assuming that it was valid, events occurring subsequent to its execution have limited its scope and operation. This was a question not submitted for decision when the bill was tendered for probate, and a question which is now for the first time submitted for judicial determination.

Finally, it is said that under sections 150, 156, 157, 158, and 159 of chapter 23, the remedy of Anna Wasserman is by a proceeding against the devisee in the will, her mother, for contribution. I think not. While such a proceeding may be proper, and in some cases necessary,—as, where the estate is personalty, and has been distributed, or partially so, or where there are specific bequests or devises, or where the testator has named some children and omitted others, and equities may arise out of advancements, (*Hill* v. *Martin*, 28 Mo. 78,)—nevertheless, contribution is not the only remedy. She took as heir, and the heir may claim the property itself. In *Smith* v. *Robertson*, 89 N. Y. 555, a case like this, the court says:

"The remedies given by the statute against devisees, to recover a portion of the property where only a portion descends to an after-born child, do not operate to subject the estate of such child to power of sale contained in the will, or to confine his remedies to a pursuit of the proceeds of sale. He is entitled,

by the plain terms of the statute, to recover the same portion of the *corpus* of the estate which he would have been entitled to had his father died intestate." See, also, same case in 24 Hun, 210; *Mitchell* v. *Blain,* 5 Paige, 588; *Sanford* v. *Sanford,* 61 Barb. 295; *Rockwell* v. *Geery,* 4 Hun, 611; *Catholic Ben. Ass'n* v. *Firnane,* 50 Mich. 82; S. C. 14 N. W. Rep. 707.

These are the only questions presented. My conclusions, therefore, are in favor of the claims of Anna Wasserman. Counsel will prepare a decree accordingly.