## CARPENTER *v.* SNOW.

1. WILLS—DISINHERITANCE OF CHILDREN—INTENT—QUESTION FOR JURY.

Under 2 How. Stat. § 5810, giving to children living at the making of their father's will, for whom no provision is made therein, the right to share as in case of intestacy if "it shall appear that such omission was *not intentional*, but was made by mistake or accident." the question of the testator's intent in this respect is one of fact, to be submitted to a jury upon all the evidence.

2. SAME—AFTER-BORN CHILDREN.

But where no provision is made in a will for after-born children, the intention to disinherit must be gathered from the language of the will itself, the statute (2 How. Stat. § 5809) applicable to such cases providing that such children shall share as in case of intestacy unless it shall be apparent "from the will" that it was the intention of the testator that no provision should be made for them.

3. SAME—CONSTRUCTION.

A will which contains simply a provision that all of the testator's property shall go to his wife affords no intrinsic evidence from which an intention to omit provision for after-born children may be inferred.

Cross-appeals from Wayne; Hosmer, J. Submitted June 8, 1898. Decided July 12, 1898.

Bill by William L. Carpenter, executor of the last will and testament of Herbert M. Snow, deceased, against Mary L. Snow, decedent's wife, and Clara L., Harry A., and Gertrude E. Snow, decedent's minor children, for a construction of the will. From the decree rendered, complainant and the infant defendants appeal. Modified

*Whitney C. Beckwith*, for complainant.

*Walker & Spalding*, for defendant Mary L. Snow.

*Matthew Finn*, for infant defendants.

MOORE, J. This is a proceeding to construe a will made by Herbert M. Snow, who was married in 1883. July 8, 1884, Clara L. Snow was born. The will in question was made April 20, 1888. Harry A. Snow was born May 7, 1889, and Gertrude E. Snow was born April 28, 1892. All these children were living when the death of Mr. Snow occurred, in October, 1897. Mr. Carpenter was named as executor in the will. Omitting the formal parts of the instrument, it reads as follows:

"*Second.* After the payment of my debts and the expenses of administering my estate, I give, devise, and bequeath all my property, real and personal, and all the property of every kind and nature whatsoever of which I may die possessed, to my beloved wife, Mary L. Snow."

As no provision was made in the will for Clara, who was born before the will was made, or for the two children born afterwards, the bill is filed to determine the respective rights of the widow and children. In the court below a decree was made holding the after-born children took no portion of the estate, and providing:

"This decree is made without prejudice to the rights of the defendant Clara L. Snow to take proceedings at law to determine whether the omission to provide for her in said will was made intentionally, or by mistake or by accident."

Extraneous testimony was taken, which, if competent, shows that Mr. Snow intended to give all his property to his wife to the exclusion of his children, having confidence in her management of the property, and her sharing it with the children. While this testimony may be competent to show that the omission to provide for Clara was not unintentional, we do not think it competent to show that the testator did not intend to provide for his unborn children.

The provisions of the statute applying to the facts disclosed by this record are as follows:

2 How. Stat. § 5809, provides:

" When any child shall be born after the making of

his father's will, and no provision shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate, and the share of such child shall be assigned to him as provided by law in case of intestate estates, unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child."

Section 5810 provides:

"When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, and it shall appear that such omission was not intentional, but was made by mistake or accident, such child, or the issue of such child, shall have the same share in the estate of the testator as if he had died intestate, to be assigned as provided in the preceding section."

It will be noticed the language in the two sections with reference to showing the intention of the testator is not at all alike. In the last-named section it is not required that the omission to provide must be shown by the will itself to be intentional. This section has been construed by this court in *Re Stebbins' Estate*, 94 Mich. 304 (34 Am. St. Rep. 345), where it is held the question as to whether the omission to provide for a child in the will was intentional or otherwise is a question of fact which may be submitted to a jury. Section 5809 has never been construed by this court. The decisions of other courts cannot be harmonized. The case of *Hawhe* v. *Railroad Co.*, 165 Ill. 561, is in harmony with the decree made by the trial judge.

The language of the statute would seem to be very plain. At the common law, marriage and the birth of children after the will was made would revoke the will. The legislature evidently had in mind that, if the father failed to make provision in his will for the unborn child, the law should make provision for it, unless the parent made it clear in the will itself that the omission to provide was intentional. How can it be said from the language used in this will that the father intended to cut off from inheriting his property two children who afterwards came to him, when no reference is made to them in the will, and

neither of them was at that time conceived? A similar statute to this was construed in *Bresee* v. *Stiles*, 22 Wis. 120, where it was held the unborn children were to take the same share in the estate as if the parent had died intestate. A like statute was construed in *Wasserman* v. *Railway Co.*, 22 Fed. 872. We cannot do better than to quote from the opinion of Justice Brewer:

"In this case, the primary question I am reluctantly compelled to decide in favor of the complainant, Wasserman. I say reluctantly, for when a man on the eve of death, having a child five years of age, and living with a wife to be delivered of a second child within 20 days, makes a will giving all his property to his wife, I think the common voice will say that he intended no wrong to either the born or unborn child, but trusted to his wife— their mother—to do justice by each, and believed that she, with the property in her hands, could handle it more advantageously for herself and children than if interests in it were distributed. As a question of fact independent of statute, I have no doubt that Mr. Wasserman had no feeling either against the born or unborn child, but, having implicit faith in his wife, meant that she should take the entire property, and believed that out of that property and her future labors she would take care of his children. But the legal difficulty is this: The statute says that it must be 'apparent from the will' that the testator intended that the unborn child should not be specially provided for. How can any intention as to this child be gathered from the will alone? It simply gives everything to the wife; is silent as to children. If I could look beyond the will, my conclusion would be instant and unhesitating. Limited by the statute to the instrument itself, what can be gathered therefrom? It is simply a devise of all property to the wife. No reference is made to children, born or unborn. Can I infer from its silence an intention to disinherit? If so, the mere omissions from a will would always stand as proof of an expressed intention. And whatever of apparent hardship there may be in the present case, a fixed and absolute rule prescribed by statute cannot, for such reason alone, be ignored. That the rule was intentionally thus prescribed is evident, not alone from the clear letter of the statute, but also from the history of this question at common law, and the various provisions of the statutes of other States. At common

law the will of an unmarried man disposing of all his property was presumably revoked by his subsequent marriage and the birth of a child. This rule was borrowed from the civil law. Whether revocation would follow from subsequent marriage alone or birth of child alone was perhaps a doubtful question. In *Brush* v. *Wilkins*, 4 Johns. Ch. 506, it was held that both must concur, while in *McCullum* v. *McKenzie*, 26 Iowa, 510, the birth of a child alone was adjudged sufficient. See, generally, upon this question, 1 Redf. Wills, chap. 7; 1 Williams, Ex'rs, chap. 3, § 5; 4 Kent, Comm. 521–526.

"It was also, for awhile, at least, disputed whether such revocation followed absolutely from subsequent marriage and birth of child, or was only to be presumed, and the presumption subject to be overthrown by evidence of the testator's intentions. Lord Mansfield, in *Brady* v. *Cubitt*, 1 Doug. 39, ruled that the presumption of revocation from marriage and the birth of issue, like all other presumptions, 'may be rebutted by every sort of evidence.' See, also, *Johnston* v. *Johnston*, 1 Phillim. Ecc. 473. Such seems to have been generally the ruling of the ecclesiastical courts. On the other hand, in *Goodtitle* v. *Otway*, 2 H. Bl. 522, Chief Justice Eyre held that, 'in cases of revocation by operation of law, the law pronounces upon the ground of a *presumptio juris et de jure* that the party did intend to revoke, and that *presumptio juris* is so violent that it does not admit of circumstances to be set up in evidence to repel it.' And in the leading case of *Marston* v. *Roe*, 8 Adol. & E. 14, by all the judges in the exchequer chamber, it was finally decided that the revocation of the will took place in consequence of a rule or principle of law, independently altogether of any question of intention of the party himself. Such being the final solution of the question in the English courts, it cannot be that the purpose of the statute in question was to open the door to any other evidence of intention than those expressly named. On this side of the waters the matter has generally been regulated by statute, with a prevailing tendency to declare that the after-born child takes the same share that it would have done if the father had died intestate; or, in other words, the will is absolutely revoked *pro tanto*, unless there is some provision made for such child, or an express intention that it should receive nothing.

"The statute of Wisconsin is identical with that of Nebraska, and in *Bresee* v. *Stiles*, 22 Wis. 120, the inquiry

as to the testator's intentions was declared to be limited to the language of the will, and, the will being silent, the after-born child inherited. See, among many cases, the following, which show how carefully the courts have enforced the rule of revocation *pro tanto* in the interest of the child: *Waterman* v. *Hawkins*, 63 Me. 156; *Walker* v. *Hall*, 34 Pa. St. 483; *Hollingsworth's Appeal*, 51 Pa. St. 518. In the first the testator left certain real and personal estate to his widow during her life and widowhood, to revert to his heirs upon her death or marriage, and gave the rest to his father. A daughter born two months after his death was held unprovided for by the will, and recovered the share of the estate she would have taken if he had died intestate. In the second the testator gave his entire estate to his wife, saying in the will, 'Having the utmost confidence in her integrity, and believing that, should a child be born to us, she will do the utmost to rear it to the honor and glory of its parents,'—and the same ruling was made. In the last case the will in terms committed any after-born child to the guardianship of his wife, adding, 'Which guardianship I intend and consider a suitable and proper provision for such child;' and still a similar decision was pronounced. Further citations would seem unprofitable.

"To sum the matter up, the common-law courts of England finally reached the conclusion that the revocation was absolute upon the happening of marriage and birth of issue, and not dependent upon evidence of testator's intention. The general tendency of statute law in this country is in the same direction, and courts, as a rule, have carefully protected the rights of after-born children. The language of the statute is plain and unambiguous. The will makes no provision for this child, does not mention or refer to her, and on its face manifests no intention that she should be unprovided for. Hence it must be held that she takes the same share in the estate which she would have taken had her father died intestate, to wit, one-half."

In passing this statute, the legislature required, if the father intended to disinherit the unborn child, he should indicate it in his will, and that it should not be left to extraneous testimony to show his intent.

The decree of the court below as to Harry Snow and Gertrude Snow is reversed, and a decree will be entered here giving to them the same interest they would have in

the property if the father had died intestate.    As to Clara
L. Snow, the decree will be without prejudice to take pro-
ceedings at law to decide whether the omission to make
provision for her was intentional.    As all the parties were
interested in the construction of this will, the costs should
be paid out of the estate.

The other Justices concurred.