O'NEALL v. HER.

1. DESCENT AND DISTRIBUTION—OMISSION OF CHILD FROM WILL—STATUTES—EVIDENCE.

On question as to whether mother's omission to provide in will for daughter by former marriage was unintentional (3 Comp. Laws 1929, § 15550), trial court properly permitted jury to consider not only will itself but also extrinsic evidence.

2. SAME—SUFFICIENCY OF EVIDENCE.

Verdict of jury that mother's omission of daughter's name from will was intentional, *held*, supported by evidence.

Error to Kent; Dunham (Major L.), J. Submitted April 21, 1931. (Docket No. 90, Calendar No. 35,501.) Decided June 1, 1931.

Petition by Alvina O'Neall in the probation of the estate of her mother, Friderike Her, deceased, against Charles F. Her, administrator, and others

for a portion of the estate under 3 Comp. Laws 1929, § 15550. Petition dismissed. Plaintiff appealed to the circuit court. Judgment for defendants. Plaintiff brings error. Affirmed.

*William J. Landman*, for plaintiff.

*Rodgers & Dunn*, for defendants.

Butzel, C. J. Friderike Her, testatrix, was first married to Conrad Rieboldt and bore unto him three children; Elizabeth, who is now known as Alvina O'Neall, and is the plaintiff herein, Frederick, who died, leaving three children, and Dorothy, who is known as Dorothy Her, which name she assumed. Plaintiff was born in 1875. Her parents were divorced the year following her birth, and she was taken to the home of Carl Bartell and wife, who named her Alvina Bartell, although they never adopted her. She remained with them until she reached the age of 17, when she married a Mr. Bishop, and subsequently moved to Chicago.

In 1878 testatrix remarried and became the wife of Adam Her of Grand Rapids. In 1888 or thereabouts, plaintiff visited the Her home over the Christmas period, but after several weeks, plaintiff's mother, the testatrix, told her that there were too many in the family, that some one would have to go to work, and plaintiff thereupon returned to the Bartell home where she remained until her marriage. Bishop died in 1916, and in 1924 plaintiff married William O'Neall, of Chicago, where she now resides.

Plaintiff's mother, after her marriage to Adam Her, became the mother of five more children, four of whom are now living. They are Charles F. Her, Mamie Anderson, Minnie Woolson, and Clara

Mackey, who, together with plaintiff's sister, Dorothy, are the defendants in the present case. Dorothy Rieboldt always remained with her mother, became a member of the Her household, and was known as Dorothy Her and treated by Adam Her the same as his own children.

At the time of plaintiff's birth and for many years thereafter, the Rieboldt and the Her families were poor and it was economic pressure that prompted plaintiff's mother to give up her child in the first instance and let her go to strangers. The Her family worked hard; Dorothy helped her father in the meat business; the mother took in washings; and it was through frugality and hard work that Adam and Friderike Her together accumulated an estate of $30,000 or thereabouts. The testimony shows that after plaintiff was first placed with others, her mother occasionally saw her in Grand Rapids, but after she married Bishop and moved to Chicago, all association ceased. For 33 years prior to the execution of the will in question in this case, plaintiff and testatrix had not met. They did not correspond with one another, nor did they even exchange an occasional card. They both acted as if they were permanently and absolutely estranged from one another. They did meet subsequent to the execution of the will, but it was not changed.

On or about the 8th day of May, 1929, Adam and Friderike Her called upon an attorney in Grand Rapids and instructed him to draw wills that were almost identical. Adam Her executed his will on the 8th day of May, 1929, and testatrix signed hers the following day. In neither will are either plaintiff or the children of Frederick Rieboldt specifically mentioned. Their names are omitted. Each will provides that the property be trusted to Charles F.

Her for the support of the surviving spouse, upon whose death the property is to go to the children, who are, however, specifically named in another clause. The pertinent provisions in the will of Adam Her are as follows:

"(c) Upon my death if my wife does not survive me, after satisfying the provisions hereinbefore set forth, I direct my trustee to divide the balance of this trust fund into as many portions of equal value as I have children, whose names I have hereinafter mentioned and to dispose of the same as hereinafter provided.

"(d) I have the following children. Dorothy Her, Charles F. Her, Mamie Anderson, Minnie Woolson and Clara Mackey.

"It is my will and I wish that Dorothy Her shall be considered in every respect as my child, and no questions shall be raised in the distribution of the share bequeath to her by reason of any illegality of adoption, or any other question affecting her parentage, and shall be treated as though she was a child of the blood, in the distribution as herein provided for.

"(e) When my trustee shall have converted by sale or otherwise all of the estate into money, which it is my will and I direct shall be done with all convenient speed, but not at the sacrifice of any value by reason of haste in such conversion, that when said estate shall be so converted by my said trustee, the said trustee is hereby directed to pay each child in sub-paragraph "d" named, an equal proportion thereof, that is to say, the said trust estate shall be divided into five parts, and I give, devise and bequeath to Dorothy Her, and to her heirs and assigns forever one-fifth (1/5) part of the entire of said trust estate.

"To Charles F. Her and to his heirs and assigns forever one-fifth (1/5) part of the entire of said trust estate.

"To Mamie Anderson and to her heirs and assigns forever one-fifth (1/5) part of the entire of said trust estate.

"To Minnie Woolson and to her heirs and assigns forever one-fifth (1/5) part of the entire of said trust estate.

"To Clara Mackey and to her heirs and assigns forever one-fifth (1/5) part of the entire of said trust estate."

Testatrix's will is similar to Adam's in all respects, except that the word "husband" is substituted for "wife" and the short clause, providing that Dorothy Her is to be considered in every respect as a child, is omitted.

Adam predeceased Friderike, and upon her death and the filing of her will for probate, plaintiff filed a petition in the probate court for Kent county asking that she be given the same share of the estate of testatrix as if the latter had died intestate. She based her application upon 3 Comp. Laws 1929, § 15550, which provides that a child shall be entitled to such a share if it appears that such an omission from the will was not intentional but made by mistake or accident. Upon appeal to the circuit court from the order denying the petition by the probate court, the trial judge refused to hold that the omission of plaintiff's name from her mother's will was unintentional and to direct a verdict. He submitted the question to the jury, who found against plaintiff's contentions.

Plaintiff has appealed to this court, the sole question raised being whether the lower court erred in not holding that "the omission was by mistake or accident and was not intentional." Our attention is called to clause "c" wherein the testatrix states that her estate is to be divided into as many portions of equal value as she has children, whose names are

thereinafter mentioned. The will then proceeds to name the children, but omits that of plaintiff. It must be noted, however, that a subsequent clause of the will provides that a share of one-fifth each shall go respectively to each of those five children who are specifically named.

Plaintiff relies on the case of *Bachinski* v. *Bachinski's Estate*, 152 Mich. 693 (125 Am. St. Rep. 427), where, however, under an entirely different state of facts, it was also held that the fact of a mistake may be proved by extrinsic evidence. The court said:

"A rule that the question must be determined 'from the four corners of the instrument' would render the statute of little value. In reason and common sense resort must be had to extrinsic evidence. The intent cannot often appear from the will itself. See note to *Thomas* v. *Black*, 8 Am. Prob. Rep. 340 (113 Mo. 66 [20 S. W. 657]), where numerous authorities are cited; *Coulam* v. *Doull*, 133 U. S. 216 (10 Sup. Ct. 253)."

In *Re Stebbins' Estate*, 94 Mich. 304 (34 Am. St. Rep. 345), where a granddaughter sought to share in her grandfather's estate by virtue of the same statute, the court said:

"There was testimony in the case in reference to the circumstances attending the making of the will; the relationship and condition of the parties; the affection existing between them; the extent and frequency of their visits and correspondence; the age of the testator; his mental and physical condition, as evidenced not only by the will itself, and by the peculiarity of some of its provisions, but also by his feeble condition about the time the will was made, and his death shortly afterwards. This class of testimony was all competent for the jury to con-

sider, and from it they had a right to determine the questions submitted to them by the court. The relation of the testator to the objects of his bounty, and to this granddaughter, as well as his intelligence, his mental and physical condition, and the circumstances connected with the making of the will, are all proper matters for consideration by the jury. *Buckley* v. *Gerard,* 123 Mass. 8; *Converse* v. *Wales,* 4 Allen (86 Mass.), 512; *Ramsdill* v. *Wentworth,* 101 Mass. 125; *Peters* v. *Siders,* 126 Mass. 135 (30 Am. Rep. 671); *Prentis* v. *Bates,* 93 Mich. 234 (17 L. R. A. 494), and cases cited. And the omission to provide may be shown to be unintentional either by the terms of the will or by extrinsic parol evidence. *Wilson* v. *Fosket,* 6 Metc. (47 Mass.) 400 (39 Am. Dec. 736)."

The same question arose in *Carpenter* v. *Snow,* 117 Mich. 489 (41 L. R. A. 820, 72 Am. St. Rep. 576), where the court said:

"Extraneous testimony was taken, which, if competent, shows that Mr. Snow intended to give all his property to his wife to the exclusion of his children, having confidence in her management of the property, and her sharing it with the children. While this testimony may be competent to show that the omission to provide for Clara was not unintentional, we do not think it competent to show that the testator did not intend to provide for his unborn children.

"The provisions of the statute applying to the facts disclosed by this record are as follows:

"2 How. Stat. § 5809 (see 3 Comp. Laws 1929, § 15549), provides:

" 'When any child shall be born after the making of his father's will, and no provision shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate, and the share of such child shall be as-

signed to him as provided by law in case of intestate estates, unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child.'

"Section 5810 (re-enacted in 3 Comp. Laws 1929, § 15550) provides:

" 'When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, and it shall appear that such omission was not intentional, but was made by mistake .or accident, such child, or the issue of such child, shall have the same share in the estate of the testator as if he had died intestate, to be assigned as provided in the preceding section.'

"It will be noticed the language in the two sections with reference to showing the intention of the testator 'is not at all alike. In the last-named section it is not required that the omission to provide must be shown by the will itself to be intentional. This section has been construed by this court in Re Stebbins' Estate, 94 Mich. 304 (34 Am. St. Rep. 345), where it is held the question as to whether omission to provide for a child in the will was intentional or otherwise is a question of fact which may be submitted to a jury."

The trial judge was correct in submitting the question of whether the omission was intentional or not to the jury, and permitting them to consider not only the will itself but also extrinsic evidence. The verdict of the jury holds that the omission was intentional. It is fully supported by the evidence. The judgment in favor of defendants is affirmed, with costs.

WIEST, CLARK, MCDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.