## HANKEY v. FRENCH.

1. Wills—Interest in Partnership is Personalty.
   A partner's interest in partnership property which comprised both realty and personalty, for purpose of construing provisions of a will concerning such property, is considered to be personalty (2 Comp. Laws 1929, § 9866).

2. Same—Operation—Intent.
   A will is not operative until the death of the maker and then speaks the intention of the maker at the time of its execution.

3. Same—Specific Legacies.
   As to specific legacies, the will speaks as of the time of its execution.

4. Same—Construction—Intent.
   The first and most important rule to be observed in construing wills is to ascertain the intention of the testator and to give effect to that intention if it be legally possible.

5. Same—Ademption—Specific Devise.
   Specific devise or bequest of property which remains in existence and belongs to testator at his death is not adeemed by slight and immaterial changes in its form.

6. SAME—ADEMPTION—PARTNERSHIP BUSINESS.

Fact that subsequent to execution of will making specific bequests to testator's wife and two sons then living of interest he had in partnership with father and brother, such partnership was dissolved and assets were taken over by testator and brother, operating partnership business under changed name, and yet later by testator alone, operating under his own name, *held*, not to have worked an ademption where assets used in the business have remained of substantially the same character as those of the original business of the partnership.

7. DESCENT AND DISTRIBUTION—AFTER-BORN CHILDREN—STATUTES— PARTICIPATION IN ESTATE.

Testator's devise of remainder interest in partnership business to "my children," naming his two boys then living, with direction that his interest in such partnership should not be sold or disposed of during minority "of either of my said sons" *held*, not sufficient to indicate an intention to make no provision for his two after-born children within statute requiring that such children participate as if parent had died intestate unless it is apparent from will that testator intended to make no provision for such child (3 Comp. Laws ·1929, §§ 15549, 15726).

8. COSTS—CONSTRUCTION OF WILL—ADEMPTION—AFTER-BORN CHILDREN.

In suit to construe provisions of will making specific bequests, costs *held*, payable from estate where matters on appeal relate to ademption of such bequests and determination of share of after-born children (3 Comp. Laws 1929, §§ 15549, 15726).

Appeal from Barry; McPeek (Russell R.), J. Submitted April 29, 1937. (Docket No. 162, Calendar No. 39,343.) Decided October 4, 1937.

Bill by Guy R. Hankey, administrator with will annexed of the estate of Reginald Sidney French, deceased, against Cora Watson French and Reginald Thomas French, Sidney Watson French, Polly Loomis French, and Otis Nathan French, minors, for the construction of a will and other relief. Cora M. Watson appointed guardian *ad litem* for minor defendants. From decree, Cora M. Watson, as

guardian *ad litem,* appealed. Reversed and decree ordered entered in accordance with opinion.

*Butterfield, Keeney & Amberg,* for plaintiff.

*Travis, Merrick & Johnson,* for defendant Cora Watson French.

*Warner, Norcross & Judd* (*Thomas H. Hefferan,* of counsel), for defendant Cora M. Watson, guardian *ad litem.*

BUSHNELL, J. The parties have come here, upon the suggestion of the circuit judge for the county of Barry, in order that there may be a final and conclusive determination of the property rights of a widow and four minor children, two of whom were born after the date of the will of Reginald Sidney French, deceased. The portions of the instrument executed on the 21st day of February, 1928, material to this appeal, are as follows:

"Paragraph 2. I give, devise and bequeath to my wife, Cora Watson French, all of my personal property of every name, kind and description, and wheresoever situated, except my interest in personal property connected with the firm of R. T. French & Sons. I do further give, devise and bequeath to my said wife, Cora Watson French, the use and income of my share or interest in the business of R. T. French & Sons, wheresoever conducted, provided, however, that my interest in said business is not to be sold or disposed of, but that the business is to be continued and that my share of the profits arising from the conduct of said business is to be paid to my wife, Cora Watson French, so long as she shall remain my widow.

"Paragraph 3. I give, devise and bequeath to my children, Reginald Thomas French and Sidney Watson French, in equal shares, my interest in the partnership of R. T. French & Sons, after the death

of my wife, Cora Watson French, or in the event of her remarriage, and I do further especially direct that my interest in the partnership of R. T. French & Sons shall not be sold or disposed of during the minority of either of my said sons."

At the time he made his will, Reginald Sidney French was copartner with his father, R. T. French and his brother, T. David French, in the firm of R. T. French & Sons. This partnership was engaged in business at Caledonia and Middleville for about 10 years prior to its dissolution in 1930; the three partners each owned an equal interest in the business. After dissolution of R. T. French & Sons, decedent's father "dropped out of the business entirely" and ceased to have any interest in its assets. A new partnership was then formed, known as R. S. & T. D. French, in which decedent and his brother, T. David, each owned an equal interest. About January 1, 1934, an oral agreement was entered into between the brothers by which Reginald Sidney French was to take over the entire business, but we understand from the record that this arrangement was never formally consummated although from the last named date until the time of his death, decedent conducted the business under the name of R. S. French.

The business properties of these successive copartnerships consisted of "real estate at Caledonia in the form of an elevator and coal plant, and at Middleville a flour mill, water power dam, and elevator, and one warehouse in addition." There was also such equipment as machinery and trucks. The surviving partner, T. D. French, testified as follows:

"*Q.* What changes, if any, in the assets of the business have occurred say since 1930.

"*A.* Well, there has been no change in the assets except perhaps some of the trucking equipment being traded in and renewed, now and then. And the

inventory has, of course, fluctuated from time to time, from day to day. But apart from that the assets used in the business at Middleville and Caledonia have remained substantially the same character as of the business of R. T. French & Sons.

"*Q.* And the assets about the same as they were at about 1928, when your brother prepared his will?

"*A.* Yes, substantially the same as they were then."

Subsequent to the date of the will, two children were born, namely, Polly Loomis French in 1929, and Otis Nathan French, in 1931. Reginald Sidney French died April 9, 1936. The will was admitted to probate and the administrator, with a will annexed, filed a bill of complaint in Barry county, seeking the aid and instruction of the court in order that decedent's interest in the partnership assets might be properly distributed. It might be mentioned here that although the partnership property comprised both realty and personalty, for the purposes of this case, it is considered to be personalty. See 2 Comp. Laws 1929, § 9866.

The record contains the following:

"(After further discussion between court and counsel it was agreed that the best interests of all parties required that a final adjudication [decree of June 25, 1936] be had upon the question of whether or not the interest of the estate in the real estate owned and used in the business conducted under the names and styles 'R. T. French & Sons,' 'R. S. & T. D. French' and 'R. S. French' is real or personal property, and whether the provisions of paragraphs two and three of the last will and testament of the deceased purporting to provide that the interest of said decedent in the business of R. T. French & Sons shall not be disposed of, constitute valid or invalid restraints upon sale and alienation of the interest

of said estate and of the defendants in this cause in said business).''

A decree, dated June 25, 1936, determined that the interest of the estate in the real estate is to be treated as personal property and that the restrictions in paragraph three of the will are an invalid restraint upon the sale and alienation of the interest of the estate in the property and these questions are not included in this appeal; the only ones involved are those of ademption and the effect of 3 Comp. Laws 1929, § 15549 upon the will.

The trial judge discussed the situation in a written opinion in which he reasoned as follows:

''Testator's interest in the partnership of R. S. & T. D. French was substantially different in character and size from his share in R. T. French & Sons. In the first place the father, as an individual and we may assume a potent figure in company counsels, was no longer a member. Secondly, instead of a one-third share, with two partners, Reginald Sidney French now owned one-half of the business, with only one partner. The total assets of the concern may have remained the same, but the company which he described in his will no longer existed when Reginald Sidney French passed away, Its personnel was altered and his interest and responsibility were definitely greater.

''I am not unmindful that it might be claimed that no ademption would have resulted had a decedent merely purchased from one of his partners a portion of the latter's interest, but I am still of the opinion that the change in the first partnership, its dissolution in fact, with the resulting change in the status of the two members of its successor, R. S. & T. D. French, take the case within the rule stated in 28 R. C. L. p. 345, and this without conflict with *In re Mandelle's Estate*, (252 Mich. 375).

"Other authorities in point, cited by counsel, are: 3 Woerner American Law of Administration (3d Ed.), pp. 1523, 1524; *In re Slater,* (1907) 1 Ch. 665 (76 L. J. Ch. 472, 97 L. T. 74); 8 Ann. Cas. 141."

The trial court held that the interest of the partnership being personal property, it all passed under the provisions of paragraph two of the will to Cora Watson French, the widow of the testator. The decree provided in part as follows:

"That the dissolution of the said partnership of R. T. French & Sons, subsequent to the date when said last will and testament of said decedent was executed, adeemed the specific legacy to Cora Watson French of the use and income of the interest of said decedent in the personal property connected with the firm of R. T. French & Sons, and the legacy of said decedent's interest in said firm to said decedent's sons, defendants Reginald Thomas French and Sidney Watson French, after the death of said defendant Cora Watson French, and that said legacy of use and income and said legacy of said interest in said firm by reason of such ademption are no longer of any force or effect whatsoever.

"That, said two legacies having been adeemed, said last will and testament of said decedent is properly to be construed as bequeathing and devising to said defendant, Cora Watson French, as the widow of said decedent, the entire of the estate of said decedent, notwithstanding the provisions of section 15549 of the Compiled Laws of Michigan of 1929, said section being hereby determined to be inapplicable to the will of said decedent and not to control or govern in any way the distribution of his estate."

In the *Mandelle Case,* 252 Mich. 375, this court, in discussing specific, general, and demonstrative lega-

cies and a number of authorities pertaining to the ademption of specific legacies, said:

"It is not expressive of the whole subject to say that a will speaks as of the date of the death of the maker. It is more accurate to say that a will is not operative until the death of the maker, and then speaks the intention of the maker at the time of its execution. It has been held that:

" 'As to specific legacies, the will speaks as of the time of its execution.'

"*In re Bradley's Estate*, 119 Misc. 2 (194 N. Y. Supp. 888), citing *Matter of Delaney's Will*, 133 App. Div. 409 (117 N. Y. Supp. 838), affirmed 196 N. Y. 530 (89 N. E. 1098)."

In the cited case there had been an exchange of par value shares of stock for no par value shares. "The stock was changed in name and form only and at all times remained substantially the same thing," and this court held:

"There was no ademption accomplished by taking five shares of no par stock for each share of par value stock. Testatrix did not initiate the change in form of shares of stock; the change occurred in consequence of corporate action which she could not control."

While there is some scarcity of parallel and applicable authorities in this State, the books are replete with ademption cases, notably, *Wiggins* v. *Cheatham*, 143 Tenn. 406 (225 S. W. 1040, 13 A. L. R. 169), where due to unfavorable legislation, a whiskey merchant stored his stock of whiskey in a public warehouse for which he held negotiable warehouse receipts, these in turn being pledged by him as security for a loan. A bequest of "my entire whiskey business now conducted at 1221–1223 Market Street, Chattanooga, Tennessee," was held to have passed

title to the legatees because "that part of the specific property bequeathed and which remained unsold was in existence at the time of testator's death and was subject to identification." Nor was there an ademption of the legacy of "one string of my pearls" where the testatrix, prior to her death, had all her pearls combined in one string or collar. *Elwyn* v. *DeGarmendia*, 148 Md. 109 (128 Atl. 913, 40 A. L. R. 553). It was held in *Goode* v. *Reynolds*, 208 Ky. 441 (271 S. W. 600, 63 A. L. R. 631), that a bequest of shares of stock in two banks is not adeemed where, before testator's death, each of them was consolidated with another bank and the shares in the consolidated bank were issued to stockholders who retained an interest in certain assets not included in the consolidation. A different conclusion, however, was reached in *Re Horn's Estate*, 317 Pa. 49 (175 Atl. 414, 97 A. L. R. 1029), where the stock of the Ohio Fuel Corporation ceased to exist when the corporation merged with Columbia Gas & Electric Company under the name of the latter.

The opinions heretofore cited contain many references to other cases and the annotations following each of them in A. L. R. lead to much of the available law. We also refer to 2 Page on Wills (2d Ed.), § 1325, *et seq.* The author of this work protests against the loose use of the term "ademption" and prefers to apply the expression "ademption by extinction." Page says (§ 1333):

"If property which is specifically devised or bequeathed remains in existence, and belongs to testator at his death, slight and immaterial changes in its form do not operate as an ademption,"

but (§ 1328)

"The real question is, whether the specific property is in existence at the death of the testator, and

whether testator then owns the interest which may pass under his will. If the property which is described in the will is not in existence, or does not belong to testator, at his death, the legacy fails."

The record before us is somewhat scanty as to facts regarding the manner in which the partnership of R. T. French & Sons was dissolved and that of R. S. & T. D. French formed. As is sometimes the case in family partnerships, it is possible that the transaction was rather loosely accomplished, but the fact still remains that, as stated by witness T. D. French, "the assets used in the business at Middleville and Caledonia have remained substantially the same character as of the business of R. T. French & Sons."

As was stated by Cozens-Hardy, Master of the Rolls, in *Re Slater, supra:*

"Where is the thing which is given? If you cannot find it at the testator's death, it is no use trying to trace it unless you can trace it in this sense, that you find something which has been changed in name and form only, but which is substantially the same thing."

There was a change in the name of the partnership and in its form, but the thing that was given by the will remained substantially the same. *In re Mandelle's Estate, supra.*

"We have repeatedly held that the first and most important rule to be observed in construing wills is to ascertain the intention of the testator and to give effect to that intention if it be legally possible." *In re Manshaem's Estate,* 207 Mich. 1, and authorities therein cited at page 9.

The will of the deceased shows that it was his intention to continue the family business during the minority of the sons named therein.

We are not confronted in this appeal with any questions raised by either side involving the law of partnership but whether the thing given by the will was in existence at the testator's death. We believe it was, although changed in name and form, and therefore hold that the change in the name and form of the partnership did not work an ademption of the legacy and that the intention of the testator, as expressed in the will, may be ascertained and given legal effect.

The remaining question presented by the appeal may be stated as follows:

Are the provisions of 3 Comp. Laws 1929, § 15549, applicable to this will? This statute says:

"When any child shall be born after the making of his father's or his mother's will and no provision shall be made therein for such child, he or she shall have the same share in the estate of the testator as if the parent had died intestate. And the share of such child shall be assigned to him as provided by law in case of intestate estates, unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child."

If Reginald Sidney French had died intestate, the residue of his personal estate would have been distributed, one-third to his widow and the remaining two-thirds to his children. 3 Comp. Laws 1929, § 15726.

The will, dated February 21, 1928, provided for "my children" Reginald Thomas French, born December 20, 1920, and Sidney Watson French, born March 24, 1923, and stated that testator's "interest in the partnership of R. T. French & Sons shall not be sold or disposed of during the minority of either of my said sons." Before the dissolution of the partnership of R. T. French & Sons, Polly Loomis French was born on December 9, 1929, and

shortly after the dissolution, Otis Nathan French, a son, on April 11, 1931.

It is argued by appellee that by using the words "my children," the testator intended that the gift was a class legacy, citing *In re Ives' Estate,* 182 Mich. 699, and that, because the after-born children were provided for in the will by inclusion within the "class," the statute, 3 Comp. Laws 1929, § 15549, is not applicable.

The class beneficiary theory of the *Ives Case,* is argued in briefs which were written before our recent decision in *Rodey* v. *Stotz,* 280 Mich. 90. We refrain from a restatement of its facts as they are easily available. We said in the *Rodey Case*:

"Defendants have not appealed and are in accord with the decision of the trial judge, who correctly found that the children of each parent took as two separate classes.

"No question remains open as to whether any after-born children of either parent may enter the class, because the testator has foreclosed this question himself by naming the specific children of each class."

In the instant case the trial court held:

"On the next issue before the court I am impressed by the argument and impelled to the conclusions of counsel for defendant, Cora Watson French, that 3 Comp. Laws 1929, § 15549, wisely designed to protect the interests of children born after the will, may not be relied upon; that its application here would work an unwarranted discrimination against the two older children, and that the testator must be held to have had in mind that the legacy in question had been adeemed, with resulting benefit to his widow, but without special favor to any of his children."

Appellants say the reasoning of the trial judge is insufficient because the only ground for refusing to

apply the quoted section is set forth in the language of the statute itself, *viz.*, "unless it shall be apparent from the will," etc.

*Carpenter* v. *Snow*, 117 Mich. 489 (41 L. R. A. 820, 72 Am. St. Rep. 576), is controlling and the reasoning of *Wasserman* v. *Railway Co.*, 22 Fed. 872, therein quoted at length, is applicable:

"The language of the statute would seem to be very plain. At the common law, marriage and the birth of children after the will was made would revoke the will. The legislature evidently had in mind that, if the father failed to make provision in his will for the unborn child, the law should make provision for it, unless the parent made it clear in the will itself that the omission to provide was intentional. How can it be said from the language used in this will that the father intended to cut off from inheriting his property two children who afterwards came to him, when no reference is made to them in the will," etc. *Carpenter* v. *Snow, supra.*

Mr. French could have indicated his wishes as to his unborn children in his will and did not do so. The references to "my children," and "my said sons," coupled with the names of these "children" and "said sons" in the will, are not sufficient to indicate an intention to make no provision for afterborn children.

The decree below is reversed and one will be entered here in accordance with the quoted language of the will, except that it shall provide that the afterborn children, Polly Loomis French and Otis Nathan French, shall have the same share in the estate of the testator as if the parent had died intestate.

In view of the nature of this appeal, costs may be paid out of the estate.

FEAD, C. J., and NORTH, WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred.