CHARLES S. BERRY *vs.* ANN H. BERRY & another.

Bristol. March 6, 1940. — May 28, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Devise and Legacy,* Testamentary direction to employ. *Words,* "Wage," "Salary."

Under a will giving the testator's "business" to his daughter and directing that she pay to his son a certain "weekly wage . . . from the business as long as she continues to run it," the daughter was not required to make such payment when it appeared that the son was not capable of performing any service of value to the business.

PETITION, filed in the Probate Court for the county of Bristol on January 25, 1939, against Ann H. Berry individually and as executrix of the will of James Berry, late of Taunton.

Ann H. Berry individually will be referred to herein as the respondent.

The case was heard by *Hitch,* J.

*H. E. Cole,* for the petitioner.

*F. P. Cohen,* for the respondents.

DOLAN, J. This is a suit in equity in which the petitioner seeks to have enforced the provisions made for him under the will of his father, James Berry, deceased. The respondent is a daughter of the testator, and the executrix of his will. Though a stenographer was appointed to take the evidence, it is not set out in the record. The judge

entered a decree dismissing the petition. The petitioner appealed and, at his request, the judge made a report of the material facts found by him.

The will of the testator was executed on November 2, 1934. Therein, after devising five designated parcels of land to the respondent, he bequeathed to her his "business known as the Berry Paper Stock Company." He also devised and bequeathed to her "the building and basement on Railroad Avenue in said Taunton which goes with the business . . . [and] the two Mack Trucks, Ford Truck and Chevrolet truck which also goes with the business . . . [and] the machinery and equipment" in the building on Railroad Avenue. He bequeathed to his daughter Alice $3,000, to be paid to her "by the executrix" within five years. He then directed that the respondent pay to his son, the petitioner, "a weekly wage of ten dollars, and if he should marry to be increased to twenty-five dollars weekly from the business as long as she continues to run it. If she ceases to run the business his salary shall cease. Business referred to is the Berry Paper Stock Company and must be run under that name." The testator then gave legacies of $1 each to his sons Thomas and James. The residue of his estate the testator devised and bequeathed to the respondent.

When the testator executed his will on November 2, 1934, he was conducting "the business of the Berry Paper Stock Company, with the assistance of his daughter . . . [the respondent] and some hired employees." The judge states that the respondent claimed she was a partner with the testator under an oral agreement, and that this "does not seem to have been denied." On December 5, 1934, however, this business was incorporated under the name of the Berry Paper Stock Company, Inc. Its capital stock consisted of fifty shares, "twenty-three for James Berry [the testator], twenty-three for Ann H. Berry [the respondent], and Charles S. Berry [the petitioner] was allocated four shares but they were not delivered to him until recently." The incorporators and directors were the testator, the respondent, who was also treasurer, and the petitioner, who was also clerk of the corporation. "After the incorporation

the business was conducted the same as before, although in the name of the corporation."

The testator died July 5, 1935. The only personal property he left was twenty-three shares of stock in the paper company, "appraised for $1,725 and household furniture appraised for $300." "Although as residuary legatee under the will of . . . [the testator, the respondent] was entitled to the stock in the . . . [paper company], she purchased it at the appraisal price, although she still owes $600 for it." "She drew out of the corporation approximately $15,000 in three years. $4,400 of this she used for her living expenses. The rest went to pay bills of the estate [amounting to about $6,000] and for expenses of and payments to" the petitioner. After the death of the testator the "business of the corporation went on as before . . . . It was managed and directed entirely by . . . [the respondent] who acted as treasurer of the corporation." The petitioner was not called upon to perform any of the duties of clerk or director, and he made no effort to assert any rights he might have.

Prior to the death of the testator, the petitioner "did some little work about the business and acted as chauffeur for his father." The testator knew that the petitioner was not capable of performing any important work. After the death of the testator the petitioner went to the plant, but only for a short time each day. Up to April 19, 1937, when he married, he lived with the respondent who paid him $5 a week and gave him his board. After he was married he was paid $25 a week by check of the corporation until March, 1938, when he left his wife and returned to the respondent's home for a time. Later he returned to his wife. He was not paid after March, 1938. On December 28, 1938, the petitioner's attorney wrote the respondent's attorney and on April 19, 1939, the respondent herself, that the petitioner was willing to work, the first letter stating "for both Ann H. Berry and the Berry Paper Stock Company, Inc., or either," the second letter stating that he was willing to work "for the business called the Berry Paper Stock Company, Inc." The present suit was begun on January 25, 1939. The peti-

tioner concedes that payments were made to him by the respondent as provided in the will up to March 1, 1938.

The judge also found that the business was conducted by the respondent as an officer of the corporation. He did not find that she discharged the petitioner, but found that she "would have been justified in discharging him as an employee, if he were an employee"; that the petitioner was unable to render any service of value to the corporation. He ruled that the respondent was not obliged to employ him since she had an obligation to the creditors of the corporation, and "perhaps of the estate" as affecting the value of the shares, not to use the funds of the corporation in employing one whose work was of no value to the company, particularly "as the earnings of the corporation did not justify it"; and that "there was no contract of employment unless it be assumed from the facts stated." He also ruled that the provision of the will concerning the petitioner did not constitute a legacy or annuity to him, but was a direction to the respondent to employ him in the business "as long as she runs it, his wages to be paid from the business and his status to be that of an employee of the business with the obligations of an employee."

Even if it be assumed, without deciding, that the testator's specific bequest of his business to the respondent was not adeemed by his act in converting it into shares of the corporation after the execution of his will (see *In re Slater* [1907] 1 Ch. 665; *Hankey* v. *French,* 281 Mich. 454, and cases cited; *Hoke* v. *Herman,* 21 Penn. St. 301, 305; *First National Bank of Boston* v. *Union Hospital of Fall River,* 281 Mass. 64, 68), and that the directions for payments to the petitioner could be enforced in appropriate circumstances (see Scott, Trusts, § 126.3; *Cooper* v. *Cooper,* L. R. 7 H. L. 53, 69; *Hyde* v. *Baldwin,* 17 Pick. 303, 308; *Noyes* v. *Noyes,* 233 Mass. 55, 61. Compare *Ramsdell* v. *O'Connell,* 269 Mass. 296, 297; *Knapp* v. *Meehan,* 287 Mass. 573, 576),[1] nevertheless, the petitioner cannot prevail upon the facts found by the judge.

---

[1] See cases cited in "Testamentary Directions to Employ"; Scott. 41 Harv. L. Rev. 709.

While the testator knew that the petitioner was not capable of performing any important work, he also knew that the petitioner did some little work about the business and had acted as chauffeur for him (the testator). We think that it was not his intention that the payments he directed to be made to the petitioner as a "weekly wage" or "salary" were to be gratuities. The words "wage" and "salary" must be given their plain and ordinary meanings. They are precise and clear and must be construed according to common usage. "Wage" in the sense used by the testator has been defined by lexicographers as compensation given to a hired person for his services, and "salary" as a reward or recompense for services performed. "Wages" and "earnings" have been held to mean the same thing. *Powers's Case*, 275 Mass. 515, 517, and cases cited.

In the absence of a report of the evidence, the findings of the judge that the petitioner has performed no service of value to the corporation and that he was not capable of so doing, being consistent with the subsidiary facts found by him, must stand.

The judge did not find that the respondent had discharged the petitioner, but found that she would have been justified in discharging him as an employee if he were such. There is nothing in the record to show that the respondent was unwilling to make the payments in question, if the petitioner was ready and able to, and did, perform some service in the business in return therefor. Since the judge has found that he was not capable of performing any such service of value, we think that the respondent was relieved of any obligation to make the payments that the petitioner now seeks to recover. The letters sent by the petitioner's attorney to the respondent and to her attorney, in which the petitioner was represented as willing to work, cannot avail him in the face of the finding of the judge that he was not capable of performing any service of value to the corporation.

*Decree affirmed.*