LEONARD W. GREENBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM ARENSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4732, 4743. Promulgated September 18, 1945.

*W. T. Durant, Esq.,* and *S. D. Miller, Esq.,* for the petitioners.
*Walter W. Kerr, Esq.,* for the respondent.

736

OPINION.

Van Fossan, *Judge*: The only question for our determination is whether partnerships, effective for income tax purposes, were in existence during 1941 among the petitioners and their respective wives with respect to Toledo Machinery Exchange Co. and L. W. Chuck Co.

The respondent has determined, and here contends, that the petitioners are taxable one-half each on the income of the two companies. He asserts that no bona fide partnerships existed among the petitioners and their wives, but that there was merely an attempt to redistribute the tax burden of the petitioners without any substantial change of control or present ownership of the property producing the income.

The petitioners contend that valid partnership agreements were entered into which must be recognized for Federal income tax purposes and that each of the parties thereto is taxable only upon one-fourth of the income.

Numerous cases involving so-called "family partnerships" have been decided by this and other courts in recent months (see, e. g., cases collected in *Lewis Hall Singletary, infra*). Such cases are not easy of disposition, for, although arrangements of this character are not to be stricken down merely because entered into among members of a close family group, they must be analyzed with particular care lest that close relationship be used as a device for circumventing the mandates of the revenue laws. As was said in *Harry C. Fisher*, 29 B. T. A. 1041; affd., 74 Fed. (2d) 1014:

Arrangements within families for the diversion of income, while not necessarily subject to condemnation because of the close relationship of the parties, are always subject to careful scrutiny, and clear and convincing evidence is required to establish their bona fides.

The facts in the instant cases are not seriously in dispute. From them we must determine the answer to the fundamental question involved in all cases of this character, namely, whether or not the petitioners and their respective wives were actually carrying on the businesses in partnership during 1941. See *Lewis Hall Singletary*, 5 T. C. 365.

First, with respect to Exchange, it is clear that no real business purpose was served by the formation of the alleged partnership with the wives. They brought no new capital into the business. It is admitted that they had no income of their own other than the amounts allegedly distributed to them as their shares of the profits. It was contemplated that the consideration for their alleged interests in the company should be paid out of the profits of the business. Furthermore, they performed no services. While it is true that occasionally Mrs. Arenson, and infrequently Mrs. Greenberg, attended to the office, this was not a result of their having been made members of the partnership. Both women had performed the same services prior to 1941 and had received no compensation therefor.

The petitioners contend that there was a definite business purpose in bringing Mrs. Arenson into the company. Arenson testified that Greenberg had involved the company in some deals it was unable

properly to take care of and that generally he was becoming "too hot to handle." Arenson hoped that his wife would exercise a restraining influence on Greenberg, who was her younger brother.

Such a purpose, however, stems directly from the family relationship rather than from any ordinary business motives. The record indicates quite clearly that Mrs. Arenson had made her influence felt before the creation of the alleged partnership. The petitioners testified that prior to 1941 Mrs. Arenson frequently took part in discussions relating to the business.

The petitioners do not contend that it was necessary or helpful to the operation of the business to make Mrs. Greenberg a member of the partnership. Greenberg testified that he insisted upon his wife being made a partner largely because of the fact that Mrs. Arenson was going to acquire an interest in the business.

The evidence further shows that it was not intended that the wives should have control over their alleged interests in the company or their shares in the profits. The agreement provided that the profits of the business could be withdrawn and distributed only at such times and in such manner as the petitioners should determine and agree. Funds could be withdrawn only by the petitioners or persons designated by them. Article IX of the agreement provided that neither Mrs. Greenberg nor Mrs. Arenson should "be entitled to exercise control of the management, or to determine questions of policy in the conduct, of the partnership, such control and determination being by this agreement expressly delegated" to the petitioners.

The petitioners "carefully guarded against any interest in the business passing into the hands of third parties." *Grant* v. *Commissioner*, 150 Fed. (2d) 915. The agreement provided that in the event of the death of either Mrs. Arenson or Mrs. Greenberg the surviving husband had the right to purchase the interest of his deceased wife at a price not in excess of that which she had "paid" for her interest.

We may say also that we are by no means convinced that the income of Exchange was not a result primarily of the petitioners' personal services. Cf. *Doll* v. *Commissioner*, 149 Fed. (2d) 239. Arenson testified that at the end of 1940 the machinery business was "pretty brisk" and that "Mr. Greenberg produced about 98 per cent of it." Yet the partnership agreement made no provisions for compensation for these personal services, a factor we deem significant.

In support of their contention that the partnership was valid and subsisting, the petitioners point out that ledger accounts were set up for each of the partners; that customers and creditors were notified of the change in status of the business; and that distributions were made to the wives.

It is of no moment that all the formalities were gone through. It

has frequently been held that the fact that all the formalities under state law were complied with is immaterial in determining whether or not a partnership shall be accorded recognition for Federal income tax purposes. *Doll* v. *Commissioner, supra; Bradshaw* v. *Commissioner*, 150 Fed. (2d) 918; *Lusthaus* v. *Commissioner*, 149 Fed. (2d) 232; *Miller* v. *Commissioner*, 150 Fed. (2d) 823. In the last cited case, the court said: "* * * the completeness with which the forms were observed is of no significance, for it is precisely what we should expect, if they were to be only forms."

The testimony with regard to the distributions to the wives is not wholly satisfactory. Neither of the wives was present at the hearing to testify as to amounts received by them. Furthermore, from the evidence in the record it clearly appears that such amounts as were distributed were not placed at their unfettered disposal. These amounts were, in each case, placed in the wife's checking account. Each of the petitioners, however, was authorized to draw on his wife's account without limit. He was thus able completely to exhaust the account and to use the sums so distributed for his own purposes.

The petitioners strongly urge that Greenberg can not be charged with more than one-fourth of the income from Exchange, since he never owned a greater interest in that company. This contention is stated in their brief as follows:

Up until the formation of the partnership on January 1, 1941, Greenberg never had any interest in the Toledo Machinery Exchange Company. On that date he acquired a quarter interest in the company. He never acquired more than this one-quarter interest. That his wife acquired a one-quarter interest is immaterial since she acquired it from petitioner Arenson in a completely arm's-length transaction. Her interest was one for which she paid. It was never owned or paid for in any manner by her husband.

This contention might be entitled to considerable weight if an arm's-length transaction were shown by the record. However, the facts fall far short of indicating such a transaction. It is admitted that the motive for the formation of the partnership was that Greenberg might acquire a proprietary interest in Exchange. Greenberg was dissatisfied with Arenson's original proposal, since he wanted more than a one-third interest. Greenberg testified that "I persisted that I wanted more than a third interest and finally, we concluded a partnership where I did get a fourth interest and my wife bought a fourth interest in the Toledo Machinery Exchange." Arenson testified on the same matter that "Mr. Greenberg was dissatisfied. He didn't want a third. He wanted a half interest or if I was going to have my wife in, he wanted his wife in, which made it a four-way."

Manifestly, Mrs. Greenberg was admitted into the partnership for the sole reason that she was Greenberg's wife. For all practical pur-

poses, she was essentially the nominee of her husband for one-half of his interest in the company. Under such circumstances, we think her interest was but a derivative interest, within the rationale of *Burnet* v. *Leininger*, 285 U. S. 136, and related cases.

What we have said with respect to the ownership of Exchange applies with equal force to Chuck. The partnership with the wives was formed "for the obvious, if not the sole, purpose" of avoiding income taxes. Cf. *A. L. Lusthaus*, 3 T. C. 540. The petitioners offer no reason for making their wives partners in this company except that it was necessary in view of the close relationship between the two companies in order to maintain an equal and proportionate division of interest of all parties with respect to the combined property, rights and affairs of the two companies. However, this would not appear to be an insuperable obstacle, since the record shows that prior to 1941 the companies were operated on different bases, Chuck being a partnership and Exchange a sole proprietorship.

Here, again, the wives brought no new capital into the business. Their alleged interests in the company were paid for in part out of profits and in part by "gift" from their respective husbands. They performed no services except occasionally to attend to the common office, as has been noted above. As in the case of Exchange, the petitioners retained all substantial economic ownership and control of the business and, therefore, we are of the opinion that the respondent correctly determined that each of the petitioners is properly taxable upon one-half of the income.

It follows that the respondent's determination must be sustained.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

KERN, *J.*, dissents.

————

BLACK, *J.*, dissenting: It seems to me that the written partnership agreement entered into on January 27, 1941, among petitioner William Arenson and his wife and L. W. Greenberg and his wife to transact business as a partnership under the name of Toledo Machinery Exchange Co. must be recognized for income tax purposes and taxed as the law provides for individuals carrying on business as partners.

The partnership agreement provides that it shall be retroactive to January 1, 1941. While that provision may be valid as between the parties, the tax effect of the partnership agreement would date from the date of the execution of the agreement and putting it into effect. But as I have already indicated, I think the business of Toledo Machinery Exchange Co. was operated as a partnership from the date of the signing of the partnership agreement and should have been so treated by the Commissioner in his determination of the deficiencies.

It is true that neither Mrs. Arenson nor Mrs. Greenberg contributed any services to the partnership, but they did contribute the share of capital assets which they each acquired by purchase in the giving of their promissory notes. These notes were subsequently paid in full, and the fact that they were paid in part out of profits received from the business and in part by gifts from their husbands, it seems to me, does not make any difference. The payments were legally made. One does not have to contribute services to be a member of a partnership. Many perfectly valid partnerships exist where one or more partners contribute no services at all, their contribution consisting of capital only. See vol. 6, sec. 35.03, Mertens Law of Federal Income Taxation. Cf. *Montgomery* v. *Thomas*, 146 Fed. (2d) 76.

As I have already stated, I think the facts show that a valid, legal partnership existed during most of the taxable year 1941 among the four persons named in the partnership agreement. Sections 181, 182, and 183 of the Internal Revenue Code prescribe how partnership income shall be taxed, and these provisions of the law afford no justification for the Commissioner to tax petitioners with the part of the partnership income which belonged to their wives.

It is true that the partnership agreement grants to the two active partners, Arenson and Greenberg, rather large powers of management and control of the partnership business, including the power to determine when partnership profits shall be withdrawn and distributed to the respective partners. See article VII of the partnership agreement. However, I do not think these provisions are so unusual in a partnership agreement as to invalidate it. On this point see *Robert P. Scherer*, 3 T. C. 776, at page 795, where we said:

* * * While it is true that under the terms of the partnership agreement Scherer, as managing partner, did exercise a large measure of control over the partnership business and had the sole discretion to determine whether the profits of the partnership of any particular year should be distributed to the respective partners or whether such profits should be retained in the partnership business, this discretion did not make him the *owner* of the shares of income which belonged to the other partners. Any income not distributed had to be credited to the capital accounts of the respective partners and accounted for as such in a final distribution of the partnership assets. * * *

We thereupon held that Scherer was not taxable on the profits which belonged to the other partners but was only taxable on the part which belonged to him. I think we should so hold in the instant case.

What I have said above with reference to the partnership operated as Toledo Machinery Exchange Co. applies with equal force, I think, to the partnership operated under the name of L. W. Chuck Co. There appears to be no essential differences in the two partnership agreements and the majority opinion does not make the point that there are any differences.

For the reasons I have given above, I respectfully record my dissent to the conclusion reached in the majority opinion.

LEECH and TYSON, *JJ.*, agree with this dissent.