ESTHER ROSENBERG, TRANSFEREE OF ASSETS RECEIVED FROM JOSEPH D. ROSENBERG, DECEASED, PETITIONER, ET AL.,[1] v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4953, 4954, 4955, 4956, 4957, 4958, 4959, 4960, 4961, 4962, 4963, 4978.

Promulgated June 10, 1946.

*S. L. Moss, C. P. A.*, for the petitioners.
*Lawrence R. Bloomenthal, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith : Edward Roberts, Transferee of assets received from the Estate of Joseph D. Rosenberg, deceased; Esther Rosenberg, Transferee of assets received from the Estate of Joseph D. Rosenberg, Deceased; Edward Roberts, Transferee of assets received from Joseph D. Rosenberg, Deceased; Wallace Roberts, Transferee of assets received from Joseph D. Rosenberg, Deceased; Wallace Roberts, Transferee of assets received from the Estate of Joseph D. Rosenberg, Deceased; Michael C. Roberts, Transferee of assets received from Joseph D. Rosenberg, Deceased; Michael C. Roberts, Transferee of assets received from the Estate of Joseph D. Rosenberg, Deceased; Robert T. Rosenberg, Transferee of assets received from Joseph D. Rosenberg, Deceased; Robert T. Rosenberg, Transferee of assets received from the Estate of Joseph D. Rosenberg, Deceased; Robert T. Rosenberg; and Estate of Joseph D. Rosenberg, Deceased, Floyd A. Frye, Administrator.

OPINION.

Van Fossan, *Judge*: The principal question is whether or not, during 1940 and 1941, Edward, Michael, and Wallace Roberts and Esther Rosenberg were partners with Joseph D. Rosenberg and Robert T. Rosenberg in the conduct and operation of the Ideal Fur Co.

The petitioners contend that, under the oral agreement entered into in 1939, each of them became partners in the business, sharing in the profits and losses to the extent specified therein, and that they are taxable individually on the profits credited to their respective accounts on the partnership books. The respondent contends that Joseph D. Rosenberg and Robert T. Rosenberg were the sole owners of the business and that the 1939 agreement merely effected an arrangement whereby the others were given a share of the profits as compensation for personal services.

Whether or not a partnership exists depends upon the intention of the parties, "to be determined from testimony disclosed by their agreement, considered as a whole, and by 'their conduct in the execution of its provisions'." *Commissioner* v. *Tower*, 327 U. S. 280. With respect to Edward Roberts, Michael Roberts, and Wallace Roberts, we think such an intention clearly appears from the evidence. The testimony discloses that in 1939 Wallace Roberts, who had worked for the company since 1934 and was then contemplating marriage, demanded an interest in the business. The other sons then made known their desires to become partners also. A series of family discussions arose, culminating at length in the agreement described in our findings. Nothing in the conduct of the parties thereafter is inconsistent with, or shows anything but, a real and subsisting intention to carry on the business as partners. While it is true, as the respondent points out, that the bank with which the partnership did business was not notified that the three younger sons had been admitted as partners, this is explained by the fact that each of them had been authorized to sign checks prior to 1939 and no further authorization or notification was considered necessary.

Each of the individuals performed services which contributed substantially to the success of the business. Edward Roberts had started with the company in about 1932. During the taxable years he sold the manufactured goods produced in the factories to stores in various cities. Michael C. Roberts, during the years in controversy, handled the financial aspects of the business and supervised the management of the office. Wallace Roberts supervised manufacturing work and purchasing. He also handled employee relationships, involving about 35 employees. Such services, in our opinion, are clearly sufficient to

entitle them to the shares of income credited to them on the company's books.

We find no evidence to support the respondent's contention that there was merely a profit-sharing arrangement to provide compensation for personal services. We hold, therefore, that Edward Roberts, Michael Roberts, and Wallace Roberts were partners in the business of the Ideal Fur Co. during 1940 and 1941 and that the profits credited to their respective accounts are taxable to them and not to Joseph D. Rosenberg or Robert T. Rosenberg.

We think a different result is required, however, with regard to the share of partnership income credited to the account of Esther Rosenberg. In the *Tower* case, *supra*, the Court said:

> There can be no question that a wife and husband may, under certain circumstances, become partners for tax, as for other purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U. S. C. §§ 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws.

In our opinion, none of the tests laid down by the Supreme Court has been met here. The evidence shows that Esther Rosenberg spent no specific amount of time in the office or factory of the company. Such services as she did perform appear to have consisted principally of occasionally "shopping" various stores in Detroit in order to compare the prices and models of competitors' merchandise. These activities were obviously of negligible value in producing the income of the partnership. It does not appear that she participated in any substantial way in the management of the company. There was testimony to the effect that she took part in conferences held among all the members of the family and that the others, at times, deferred to her suggestions. There is no evidence that she actively participated in the management of the business, however, and her presence at conferences and the occasional deference to her wishes by her husband and sons seem to stem directly from the family relationship involved rather than from business motives. Cf. *Leonard W. Greenberg*, 5 T. C. 732. Furthermore, she contributed no capital of her own to the business. Her capital interest was provided solely by "gift" from her husband, evidenced by a transfer to her account of a portion of his capital account. As was held in the *Tower* case, such a gift of an interest is not sufficient in and of itself to constitute a wife a partner with her husband. We conclude, therefore, that Esther Rosenberg was not a member of the partnership during the taxable years before us and that

the income credited to her was properly taxable to Joseph D. Rosenberg during his lifetime.

The other issue is whether the share of partnership profits which was attributable to the interest of Joseph D. Rosenberg and was earned after his death is taxable to his estate or to Esther Rosenberg. Joseph D. Rosenberg, whom we shall hereinafter call the decedent, died on August 14, 1941. Within two months after his death and without formal probate proceedings, his sons orally agreed to give to Esther Rosenberg the decedent's interest in the partnership and the profits applicable thereto. To effectuate this agreement the total profits for the year 1941 were divided by allocating 62½ per cent thereof to the period January 1 to August 14 and 37½ per cent to the remainder of the year. The profits for the first period, after allowance for salaries, were credited to the various members of the family in accordance with the 1939 agreement; for the second period, in addition to the 10 per cent previously credited to her, Esther Rosenberg was credited with the decedent's 20 per cent and with his salary allowance.

We do not think that any such attempted assignment by the sons to their mother can operate to make her the owner of the decedent's interest in the partnership or to render her taxable on the income thereof. The general rule, which is in force in Michigan, is that title to personal property of a decedent at his death does not pass to his next of kin, but passes to his executor or administrator upon appointment. The title remains in abeyance until administration is granted in his estate and is then vested as of the time of his death in the executor or administrator. The title vests in the personal representative until administration is completed and the estate is fully settled and distributed, or until he chooses or is forced to part with it earlier. See *Michigan Trust Co.* v. *City of Grand Rapids*, 262 Mich. 547. And under the laws of Michigan a deceased partner's interest in the partnership is considered personalty for purposes of distribution of his estate, although the partnership property may be comprised of both real and personal property. See *Hankey* v. *French*, 281 Mich. 454; 275 N. W. 206.

The petitioners cite section 20.42 of the Uniform Partnership Act, which is in force in Michigan and which provides as follows:

§ 20.42] *Rights of retiring or estate of deceased partner when the business is continued.* SEC. 42. When any partner retires or dies, and the business is continued under any of the conditions set forth in section forty-one (1, 2, 3, 5, 6) [41 (1, 2, 3, 5, 6)], or section thirty-eight (2b) [38 (2b)], without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or,

at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership: *Provided*, That the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by section forty-one (8) [41 (8)] of this Act.  (C. L. '29, § 9882.)

We know from the pleadings that an administrator was appointed for the estate of Joseph D. Rosenberg.  We assume there was no will. We have no evidence as to what, if anything, his legal representative did in the premises—whether or not he exercised the option granted by the above quoted statute.  We know that the respondent determined that the estate was taxable and that the burden rested on the petitioners to prove him to be in error.

From the above we think it clear that title to the decedent's interest in the partnership did not pass to his heirs upon his death.  Consequently, their attempted transfer of such interest to Esther Rosenberg was ineffectual and did not constitute her the owner thereof. Regardless of the effect as between themselves, this informal action did no more than assign part of the income.  Since the respondent has determined, in effect, that title to the decedent's interest vested in his personal representative when appointed and taxed the estate accordingly, and since petitioners have not proven that action to be erroneous, it follows, under the rule of *Lucas* v. *Earl*, 281 U. S. 111, and related cases, that the profits attributable to such interest are properly taxable to the decedent's estate.  On this point, therefore, the respondent is sustained.

There remains the question concerning the amount of profits which is to be included in the income of the decedent's estate.  As has been shown, the petitioners computed the profits for the period following the death of the decedent to the end of 1941 by allocating to that period 37½ per cent of the profits for the entire year 1941.  In his notice of deficiency the respondent did not follow this division of profits, but (having determined that the decedent owned a 60 per cent interest in the partnership at his death) determined that 60 per cent of the profits for the entire year 1941 was taxable to his estate.

Since, under our holding on a previous issue, the decedent was possessed of only a 30 per cent interest in the partnership at his death, the respondent's position is rejected in so far as it attempts to include in the income of the decedent's estate a greater share of the partnership profits.  The petitioners, however, have produced no evidence to show the amount of profits actually earned after the death of the decedent.  There is nothing to indicate that the arbitrary division of profits made by the petitioners in any way fairly reflects the actual profits earned in the periods before and after his death.  It was the petitioners' burden to show that the income properly taxable to the

decedent's estate was in an amount less than that determined by the respondent. They have failed to do so and we consequently have no alternative but to sustain the respondent. We hold, therefore, that 30 per cent of the entire net income of the partnership for 1941 is to be included in the gross income of the decedent's estate.

*Decisions will be entered under Rule 50.*