Abe Globman v. Commissioner.
Globman v. Commissioner
Docket No. 9237.
United States Tax Court
1947 Tax Ct. Memo LEXIS 85; 6 T.C.M. (CCH) 1061; T.C.M. (RIA) 47261; September 30, 1947
Morton Honeyman, Esq., 1214 Colonial-American Nat. Bank Bldg., Roanoke, Va., and Edward H. Hardy, Esq., 1203 State-Planters Bank Bldg., Richmond, Va., for the petitioner. Elmer M. Corbin, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Petitioner, Abe Globman, is an individual residing in Martinsville, Virginia. His income tax return for the calendar year ended December 31, 1941, was filed with the collector of internal revenue for the district of Virginia. Respondent has determined a deficiency in petitioner's income tax for the year 1941 in the amount of $22,632.41. The questions presented for consideration are: "(a) Whether a bona fide partnership recognizable for Federal income tax purposes existed in *86 the year 1941 between petitioner, his wife, and his son for the purpose of operating a mercantile establishment in Martinsville, Virginia, under the trade name of 'Globman's.' "(b) Whether a bona fide partnership recognizable for Federal income tax purposes existed in the year 1941 between Daniel A. Greene and Nathan Potolsky for the purpose of operating a mercantile establishment in Galax, Virginia, under the trade name of 'Globman's' and whether any portion of the profits realized in 1941 in the operation of the business in Galax, Virginia, should be included in petitioner's income for that year." Findings of Fact Petitioner has been engaged in the operation of a retail clothing store in Martinsville, Virginia, under the trade name "Globman's" since 1915. Petitioner started this business a few weeks before he married his wife, Mamie. At the time of their marriage he had $400 and she had $200, which they each contributed to starting the business. Both have worked continuously in the store from its inception to the present time. Mamie Globman has had complete charge of the ladies' ready-to-wear department of the store and has assisted petitioner in conducting the rest of the *87 business. As the store's business grew, a building next door was acquired and in about 1925 a basement store was put into operation. In 1935 the ladies' ready-to-wear department was moved to the second floor and from that time on has occupied that entire floor. Mamie Globman has, at all times, including the taxable year, been in charge of this department and supervised the employees working in it. She has about ten girls under her supervision in this department as well as three girls in the alterations department, which does alterations for the entire store. Approximately one-third of the volume of business of the store is done by Mamie Globman's department. She makes a number of buying trips regularly to purchase merchandise for her department on which she exercises her own independent judgment in determining the items and the quantities thereof which should be purchased. No salary was paid to Mamie Globman for her services until about 1932. From 1932 through 1936 she received a salary of $50 per week. In 1937 and 1938 she received $7,600 for each year and for 1939 she was paid $6,600. The salaries received by her in 1937, 1938 and 1939 were reported on her individual income tax *88 returns for those years. Mamie Globman did not draw all of the salaries payable to her, and salaries were accumulated in her account. As at December 31, 1940, her account showed a balance to her credit in the amount of $28,656.09, of which sum $22,000 represented salaries credited to her account prior to December 31, 1939, and not paid, and the balance of $6,656.90 represented a portion of the profits for 1940 which was credited to her account. Prior to 1939, petitioner's and Mamie Globman's son, Leon, worked in the store during his spare time and vacations from school. This continued during his six college and law school years. He graduated from the University of Virginia Law School in 1939, after having been admitted to the Virginia State Bar in 1938. He intended to practice law after graduation from law school, but in 1939 petitioner induced him to come into the business by offering him a one-third partnership interest therein, petitioner keeping two-thirds. The agreement whereby Leon became a partner in 1939 was oral. Leon put no new capital into the business. In college Leon had received a degree in commerce and a degree in business administration and had taken courses in *89 accounting. By the time he entered the business in 1939, when he was 23 years old, he was completely familiar with the operation of the business. In 1934, when 18 years of age, Leon had taken charge of the business while petitioner and Mamie Globman took a trip abroad. After coming into the business in 1939 Leon took complete charge of the merchandising and buying for the shoe department. He installed a modern accounting system and an efficient inventory control system. He persuaded his father to change the quality of merchandise handled by the store so that higher priced and nationally-advertised lines were carried in order to attract new customers. He conceived a plan for staging fashion shows in the store, which was an innovation. Leon planned and promoted the shows and worked with his mother in presenting them. He also conceived some contests whereby the sale of yard goods or cloth by the store was stimulated. Leon took charge of all promotional and advertising activities of the business and was successful in increasing the charge business of the store. He assisted petitioner in the operation of the store as a whole and relieved him of many responsibilities. Prior to Leon's entering *90 the business, the store had outgrown its method of operation and Leon did much to modernize and improve the operating procedures. After Leon came into the business the volume of business and the profits increased materially. The account of Leon Globman, on the books of Globman's, Martinsville, as at January 1, 1939, showed no balance. As at December 31, of that year $3,663.42 less drawings of $382.50 was credited to his account. During 1940 there was credited to the account profits of $9,982.15 less drawings of $1,324.05, leaving a net credit of $8,660.09 and a balance of $11,941.01. During 1941 cash from petitioner in the sum of $2,500, profits of $18,338.57 less drawings of $1,402.74, or a net credit of $19,435.83 was credited to Leon's account. The balance in this account at the end of 1941 was $31,376.84. Leon could withdraw his capital at any time he desired to do so and there were no restrictions as to his use of his capital. A certificate was filed with the Circuit Court of Henry County, Virginia, on January 12, 1940, showing petitioner and Leon as being partners, doing business as "Globman's" in Martinsville. A partnership return of income was filed for the year 1939 showing *91 petitioner and Leon as partners. On many occasions Mamie Globman requested that she be made a partner in the business. In 1939 after Leon became a partner and after she learned that he was contemplating marriage, she renewed her request. In December 1940 an oral agreement was entered into between petitioner, Leon and Mamie Globman for a new partnership arrangement under which she received a 25% interest in the business and petitioner and Leon each received 37 1/2% interests. When she received this partnership interest she contributed the sum of $22,000 to the capital of the business, this amount being transferred from her undrawn salary account. On December 23, 1944, petitioner, Mamie Globman and Leon executed a written partnership agreement reducing to writing their verbal agreement. By its terms this instrument was retroactive to December 1940, the date of the oral agreement. Each of the three partners, after the new partnership was created in 1940, had authority to sign partnership checks and to act on behalf of the partnership. Leon Globman worked in the business of Globman's, Martinsville, Virginia, during the entire years 1939, 1940 and 1941. In 1929 petitioner opened *92 a store at Galax, Virginia, in partnership with Nathan Potolsky. This store was similar in nature to the Martinsville store and will be hereinafter sometimes referred to as "Galax". All of the capital for the Galax store was furnished by petitioner and the store was operated by Potolsky. The two men were equal partners in this business. In 1930, 1931 and 1937 petitioner entered into similar partnerships with other individuals with respect to stores in Reidsville, North Carolina, Leaksville, North Carolina, and Rocky Mount, Virginia. In each of these partnerships, petitioner's agreement with his partner was oral, and petitioner put up the capital whereas the other partner operated the store. In 1940 Daniel A. Greene married petitioner's daughter. At that time he was a traveling salesman representing a large manufacturer of men's work clothes. Although Greene had been successful in his work as a traveling salesman, and reasonably looked forward to greater success in the future, petitioner urged him to enter some other business. Petitioner suggested that the Galax store was in need of help, since Potolsky was in poor health, and that Greene should go into that store. Petitioner further *93 suggested that if Greene proved to be qualified for the retail business, he would sell Greene his interest in that store. Greene began working in Galax in February 1941 and severed his connection with his former employer effective as of March 31, 1941. In June 1941 petitioner entered into an oral agreement with Greene to sell the latter his one-half interest in Galax. The consideration to be paid by Greene for this interest was the book value of petitioner's half interest in the store as of January 1, 1941, which amounted to $36,874.55. It was agreed that Greene would pay petitioner this sum over a period of five years. Inventory at the Galax store is taken only once a year, at the end of the year; it was for this reason that the value of petitioner's interest was measured by the book value of his interest as of January 1, 1941. Potolsky agreed to the sale of petitioner's interest to Greene and accepted Greene as a partner on the condition that petitioner until Greene paid his indebtedness to the petitioner. Potolsky imposed this condition in order that the credit standing of Galax would not be impaired by petitioner's withdrawal from the business. Petitioner accepted the condition. *94 After Greene severed his connection with his former employer, he devoted his full time to Galax. He took charge of several departments, including the men's and boy's departments, and took charge of all advertising for the store. He was instrumental in improving the quality of the merchandise handled by the store and in bringing in new lines of merchandise. He developed a sales training program for the employees. He assisted Potolsky in the other departments and shared in the responsibility of deciding matters of policy. Greene had full authority to sign checks and to bind the store in any contractual obligations. On one occasion, at least, in August 1941, he negotiated a substantial note from a local bank on behalf of the business and signed the note therefor. The Martinsville store has continued a well-established practice of buying merchandise for Galax and keeping such books of Galax as pertain to accounts payable. Petitioner has continued to have the right to sign checks on behalf of Galax in payment for such merchandise. Martinsville makes purchases on behalf of Galax in order to obtain discounts because of the larger volume achieved by combining the purchasing of the several *95 stores. In order to reduce duplication in bookkeeping, Martinsville maintains the record of the accounts payable of Galax and petitioner has the right to sign checks for Galax in order to facilitate the payment of such accounts. Galax pays Martinsville a fee for these services. Potolsky and Greene still seek and obtain advice from petitioner with respect to the operation of the business in Galax. Neither the creditors nor customers of Galax were given any formal notice of petitioner's withdrawal as a partner in Galax in 1941. Petitioner has not received any portion of the profits, as such, of Galax for the year 1941 or thereafter. The capital accounts of Globman's, Galax, as per balance sheets as of December 31, 1940, and December 31, 1941, respectively, were as follows: 1940
Abe Globman
$36,874.55
Nathan Potolsky
16,015.08
Total net worth
$52,889.63
1941
Abe Globman
$35,374.55
Nathan Potolsky
23,023.29
D. A. Greene
17,608.20
Total net worth
$76,006.04 The credit balance of $17,608.20 in the account of Greene on December 31, 1941, represented in part the following: Share of profits of Glob-
man's, Galax, credited to
the account
$12,850.70
Less: withdrawals
1,242.50
Net
$11,608.20
Transfers from Abe Globman Capital
Account on books of Globman's,
Martinsville, Virginia
2,500.00
Transfer from Abe Globman's Capi-
tal Account on books of Globman's,
Galax
1,500.00
Total credit balance
$15,608.20
*96 Greene contributed no money to the Galax partnership at the time that he became a partner. However, in September, 1941, he contributed $2,000 of his own funds to the business. In 1941, petitioner made gifts of $1,500 and $2,500 out of his capital accounts at Martinsville and Galax to Greene, as above indicated. In January 1942, Greene put $2,000 more of his personal funds into the business. During 1942 and 1943 further reductions in Greene's indebtedness to petitioner were made, so that at the end of 1943 the amount still due was $28,374.55. The record is not clear as to what portion of this reduction in indebtedness was as a result of payments made by Greene from his share of the profits at Galax and as to what portion consisted of transfers to Greene by petitioner out of the latter's capital account. On December 26, 1944, Greene paid the balance of his indebtedness to petitioner by a check in the amount of $28,374.55 drawn on the partnership bank account in a Galax bank; Greene's capital account in the partnership was reduced by this amount. On December 24, 1944, a partnership agreement was executed between Potolsky and Greene, which provided, in part, as follows: "WHEREAS, *97 the said parties entered into a partnership in the month of June, 1941, to own and operate a general department store in Galax, Virginia, under the firm name and style of 'Globman's'; and, "WHEREAS, no written partnership agreement has been executed by the partners and all transactions have been conducted by verbal agreements; and "WHEREAS, the said parties now desire to reduce to writing their verbal understandings and to execute a partnership which shall be retroactive and controlling in all transactions between the parties from the beginning of the partnership in June, 1941, as well as future transactions: "NOW, THEREFORE, the said parties hereby covenant and agree as follows: * * *
"3. The term for which the said partnership is organized is unlimited. "4. Effective as of June 1, 1941, Abe Globman, who held a one-half interest in the partnership operating the business known as Globman's in Galax, Virginia, (the other one-half interest being owned by Nathan Potolsky), sold his one-half interest to D. A. Greene, who thereby became the owner of one-half interest in the partnership, with Nathan Potolsky owning the other one-half interest. "5. The said partnership and *98 the said partners shall be fully liable for all debts existing on June 1, 1941, and all other debts which have been or may be legally incurred by the said partnership since the date of organization and until the date of dissolution; and it is further understood and agreed by the partners that although the trade name of Globman's has been, is and will continue to be used, neither Abe Globman, Leon Globman or Mamie Globman, of Martinsville, Virginia, has any legal interest in the partnership." The partnership return of income of Galax for 1941 showed the distributive shares of the partners as being: N. Potolsky
$14,070.71
D. A. Greene
12,850.70
Net partnership income
$26,921.41
Respondent has conceded on brief that the partnership with respect to petitioner and Mamie Globman should be recognized. Leon Globman was a bona fide member of the partnership operating the Martinsville store during the taxable year 1941. A valid partnership between Daniel A. Greene and Nathan Potolsky for the operation of Galax came into being on June 1, 1941, and petitioner was not a member of the partnership operating Galax after that date. Opinion KERN, Judge: The issues here *99 involved are: "(1) Whether Leon Globman, petitioner's son, was a bona fide member of the partnership operating Globman's, Martinsville, in the year 1941, and whether the income derived from the operation of that store in 1941, which was credited to the account of Leon Globman, should be included in its entirety in petitioner's gross income for 1941 and taxed to him under sec. 22 (a) of the Internal Revenue Code. "(2) Whether a bona fide partnership recognizable for Federal income tax purposes existed in the year 1941 between Daniel A. Greene and Nathan Potolsky for the purpose of operating a mercantile establishment in Galax, Virginia, under the trade name of 'Globman's' and whether any portion of the profits realized in 1941 in the operation of the business in Galax, Virginia, should be included in petitioner's income for that year." With respect to the first issue as to whether Leon Globman was a bona fide member of the partnership operating the Martinsville store, in the taxable year 1941, we are of the opinion that the evidence here clearly establishes that he contributed very substantially to the production of the income of the business. The services *100 which he rendered were "vital" within the rule of Commissioner v. Tower, 327 U.S. 280, and Lusthaus v. Commissioner, 327 U.S. 293. It further appears that petitioner, his wife and Leon "really intended" to carry on the business as a partnership and did carry on business in that form. This partnership was not a "mere paper reallocation of income among family members" and petitioner is not taxable upon any portion of the income derived from the operation of Globman's, Martinsville, in 1941 which was credited to the account of Leon Globman. Howard B. Lawton, 6 T.C. 1093, Esther Rosenberg, 7 T.C. 73, Walter J. Runyon, 8 T.C. 350, and William F. Fischer, 5 T.C. 507. As to the second issue, we are of the opinion that a bona fide partnership between Daniel A. Greene and Nathan Potolsky came into being on June 1, 1941, on which date petitioner sold his one-half interest in Galax to Greene. The evidence clearly shows that after acquiring this interest, Greene conducted himself as a partner and contributed vital services to the operation and management of the Galax store. It appears from the record that the sale *101 of petitioner's interest to Greene on June 1, 1941, was a bona fide business transaction and not a mere reallocation of income among family members. Although we conclude that respondent cannot be sustained in his determination that petitioner is taxable upon one-half of the income of Galax in the taxable year 1941, we are of the opinion that petitioner is taxable on five-twelfths of 50% of that income. Section 182 of the Internal Revenue Code provides that "in computing the net income of each partner, he shall include, whether or not distribution is made to him * * * (c) his distributive share of the ordinary net income or the ordinary net loss of the partnership * * *" (Italics supplied). The evidence here before us establishes that until June 1, 1941, petitioner was an equal partner with Potolsky in Galax and until that date Greene had no partnership interest in the enterprise. The fact that Greene was to pay petitioner the book value of the latter's interest in Galax as of January 1, 1941, does not make January 1, 1941, the date on which the Globman-Potolsky partnership terminated and the Greene-Potolsky partnership came into being. Inasmuch as Galax took *102 inventory only at the end of each year, it was convenient for the petitioner and Greene to select the book value of petitioner's interest as of January 1, 1941, as establishing the price which Greene should pay for petitioner's one-half interest. Although petitioner apparently did not receive any part of the income of Galax for 1941, nonetheless the statute requires that in computing his net income, he shall include, whether or not distribution is made to him, his distributive share of the ordinary net income of the partnership of which he was a member. The fact that petitioner apparently saw fit to allow Greene to receive his share of the profit for the first five months does not alter this requirement. Ruprecht v. Commissioner, 39 Fed. (2d) 458. See Erwin R. Effler, 29 B.T.A. 784. The record here before us does not reflect the amount of income earned by the Globman-Potolsky partnership prior to the date of its termination. Furthermore, there is no evidence from which we can precisely compute the amount of this income. Therefore, we find it necessary to allocate the 1941 income on a time basis and to conclude that petitioner is taxable on five-twelfths *103 of 50% of the 1941 income of the Galax business. Carl Lang, et al., 3 B.T.A. 417, C. E. Cooper, et al., 4 B.T.A. 1264. See Robert Gage Coal Co., 2 T.C. 488, 499. Decision will be entered under Rule 50.