Robert H. Cole v. Commissioner.
Robert H. Cole v. Commissioner
Docket No. 12760.
United States Tax Court
1948 Tax Ct. Memo LEXIS 248; 7 T.C.M. (CCH) 105; T.C.M. (RIA) 48023; February 25, 1948
*248 Geo. E. H. Goodner, Esq., Munsey Bldg., Washington, D.C., and Scott P. Crampton, Esq., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This case involves deficiencies in petitioner's income tax determined by the Commissioner of Internal Revenue for the calendar years 1943, 1944 and 1945, in the respective amounts of $28,754.24, $38,462.18 and $33,166.10. The deficiency asserted in each of these years arises out of the refusal of the Commissioner to recognize Monica M. Cole, the wife of the petitioner, as a member of the partnership of Cole & Company, a Knoxville, Tennessee, firm operating a chain of retail drug stores. The petitioner alleges error on account of this refusal and as an alternative alleges that if said Monica M. Cole was not a partner during those years the Commissioner erred in failing to allow her remuneration for services rendered as an employee of the partnership and for use of her capital in the business during that time. The principal question for determination by the Court is whether during the years in question Monica M. Cole was a partner in the firm of Cole & Company *249 for income tax purposes. The petitioner further contends that if we should determine that she was not a partner, then she is entitled to remuneration as an employee for services rendered, and further, that she had a capital investment in the firm for the use of which she is entitled to remuneration. Findings of Fact The petitioner, Robert H. Cole, is an individual residing in Knoxville, Tennessee, with his principal office at 712 - 17th Street. From the year 1930 through the taxable years 1943, 1944 and 1945, and to the present time, the petitioner has been engaged in the retail drug business with stores in the city of Knoxville and other nearby Tennessee cities. His income tax returns for the last above mentioned years were filed on a cash basis with the collector of internal revenue for the district of Tennessee. The petitioner was married in Kentucky in 1927, and shortly thereafter he and his wife, Monica M. Cole, moved to Knoxville, Tennessee, where they have continued to reside. They have two children, one born September 6, 1938, and another born January 8, 1943. The petitioner is a graduate of the University of Kentucky, and since 1930 has been associated with Robert F. *250 Mitchell in the retail drug business. The petitioner is not a pharmacist but Mitchell, with whom he is associated, is a registered pharmacist, licensed in both Kentucky and Tennessee. In 1930, with a limited amount of capital, they formed a corporation which opened a drug store in a bus terminal in Knoxville, Tennessee. The business was successful and between that time and the end of the year 1938 they had expanded to include four stores, three of which were located in Knoxville, Tennessee, and one in Maryville, Tennessee. In 1938, the corporation was dissolved and thereafter petitioner and Mitchell formed a partnership, operating under the firm name of Cole & Company. This partnership continued in operation until January 1, 1943. While there was no written partnership agreement, the petitioner's interest in the partnership was 76.6 per cent and Mitchell's 23.4 per cent. Both parties devoted their entire time to the partnership business, the petitioner devoting the major portion of his time to the purchase of merchandise, maintenance of the accounting records, and looking after other administrative matters connected with the office of the business. Mitchell devoted most of his time *251 to the supervision of the several stores and from time to time served as manager of one or more of them. Together he and the petitioner had supervision of store personnel and various other matters in connection with their operation. During this period Mrs. Cole exhibited the usual wifely interest in her husband's business. From time to time the petitioner discussed business problems with her and received her suggestions in regard thereto. She visited the Knoxville stores on numerous occasions and from time to time made suggestions to the petitioner for improving the services at those stores. Most of her suggestions had to do with the courtesy and appearance of the personnel at the stores and with some types of merchandise, particularly in the line of cosmetics which were offered for sale, the manner in which merchandise was displayed, and the color scheme for interior decoration. Mrs. Cole made no demand for and received no compensation from Cole & Company for these visits and suggestions. Between 1938 and 1942 the firm acquired additional stores and gross sales and net profits increased materially, as shown below: Year
Gross Sales
Net Profit
1938
$220,718.39
$18,629.52
1939
301,360.16
25,414.60
1940
346,513.18
34,272.65
1941
448,406.08
34,957.95
1942
596,229.63
73,206.12
*252 The net profits realized by the firm during these years were divided between Mitchell and petitioner, as set forth below: Year
Petitioner
Mitchell
1938
$13,278.77
$ 5,350.75
1939
18,159.55
7,255.05
1940
24,948.35
9,324.30
1941
25,473.12
9,484.83
1942
54,786.66
18,419.46
In the latter part of 1942 petitioner, then being 37 years old and this country being at war with Germany and Japan, was somewhat concerned over the possibility of his being inducted into military service. At that time petitioner and his wife had one child four or five years of age and were expecting another. His partner, Mitchell, was also of draft age and there was a possibility that he might also be inducted into service. The petitioner thought that it would be advisable to place his wife in a position to assume management of the business in the event that he, or both he and Mitchell, were inducted into military service. He had told his wife some time before that he would create a separate estate for her as soon as he was able to do so. On or about January 1, 1943, the petitioner, with the consent of his partner, Mitchell, transferred 30.64 per cent out of his 76.6 per cent *253 interest in Cole & Company to Mrs. Cole. Thereafter, he filed a gift tax return on Form 709, placing a valuation of $36,000 on said transfer and paid a tax of $67.50. On the same day the petitioner, Mrs. Cole and Mitchell executed the following agreement: "THIS AGREEMENT, made and entered into as of the 1st day of January, 1943, between ROBERT H. COLE, of Knox County, Tennessee, ROBERT F. MITCHELL, of Knox County, Tennessee, and MONICA M. COLE, also of Knox County, Tennessee. "WITNESSETH: "WHEREAS, the parties hereto have agreed to do business as a partnership under the name and style of 'Cole & Company', and "WHEREAS, the parties desire to evidence their agreement by an instrument in writing setting forth the terms and conditions thereof. "NOW, THEREFORE, THIS AGREEMENT WITNESSETH: "The parties hereto agree to become partners as of the date of this contract, for and during the term of one year, and from year to year thereafter unless sooner cancelled, as hereinafter provided, and subject to the following provisions herein contained: "1. The business of the partnership shall be carried on under the name of 'Cole & Company', and shall be generally that of a retail drug *254 store and such allied and affiliated lines as are customarily carried on by a retail drug store or a group of retail drug stores. "2. The capital of the partnership shall consist of furniture, fixtures, inventories, accounts and notes receivable, and such sum or sums of money as shall, from time to time, be required, and shall initially be those assets shown on the balance sheet annexed hereto and made a part hereof, and the said partnership shall initially assume the liabilities shown on said balance sheet. "3. The partnership shall be owned in the following proportions: Robert H. Cole
45.96%
Robert F. Mitchell
23.40%
Monica M. Cole
30.64% and the liabilities of the partners, as between themselves, on account of the obligations incurred by the partnership, shall be in the same proportion as their interest in and ownership of the assets of the partnership. "4. All moneys received by the partnership, or any one or more of the partners, shall be deposited immediately to the credit of the partnership in such banks as may be designated, and all checks drawn thereon shall be drawn in the name of the partnership. "5. All rents, repairs, wages of clerks and employees, *255 and other expenses which may be incurred in carrying on the business of the partnership, and all losses and damages resulting in the same, shall be paid out of the gross profits of the partnership, and if such profits of the partnership are not sufficient to pay the same, then the same shall be paid by the partners in proportion to their interest in the partnership. "6. Profits arising from the operation of the partnership shall be divided among the partners, as follows: Robert H. Cole
$500.00 per month
Robert F. Mitchell
$300.00 per month
Monica M. Cole
$100.00 per month
"In the even the profits shall not be sufficient to pay the said sums above set forth, then they shall be reduced on a pro rata basis. Any profits in excess of the sums above set forth shall be divided among the partners in proportion to their interest in and ownership of the partnership, as set forth in Paragraph 3 above. "7. The partners may withdraw each month from the funds of the partnership the amount set forth in Paragraph 6 above, but the remaining profits shall not be withdrawn until the annual accounting of the partnership, as hereinafter provided. "8. Each partner shall, during *256 the existence of the partnership, devote such time as may be necessary to the partnership business, and shall not, either alone or in conjunction with another partner, either directly or indirectly, engage in any other trade, business or profession without the written consent of the remaining partners. "9. No partner shall use any of the moneys of the partnership, or pledge the credit thereof, except for the use or account thereof, without the written consent of the other partners. "10. No partner shall make or enter into any bond, or become bail, surety or security with or for any person without the consent of the other partners. "11. Each partner shall, during the existence of the partnership, pay his present and future debts promptly. "12. Proper books of account shall be kept, and entries made thereon of all moneys received and expended by the partnership, and of debts due to and by the partnership, and of all other matters and things relating to the partnership, which are properly or usually entered in books of account. "13. On the 31st day of December, 1943, and on the 31st day of December in each succeeding year during the existence of the partnership, a general account *257 in writing shall be made of all moneys, debts and effects owned and held by the partnership and of all liabilities thereof, and of all other matters and things properly included in such an account. The share of the net profits of each partner, after deducting the amount drawn by him, shall be carried to his credit on the books of the partnership after such annual general account shall have been made, and may be drawn out by each partner at pleasure, provided said net profits shall be converted into cash and all debts of the partnership have been paid in full. "14. In the event of a voluntary dissolution of the partnership by the withdrawal of a partner with the consent of the other partners, the remaining partners shall have the right to purchase the interest of the withdrawing partner in the assets and unfinished business of the partnership by paying to the withdrawing partner his contribution to the capital of the partnership, together with his share of the net profits of the partnership duly credited to such partner's account under the usual accounting practice of the partnership. "15. In the event of the death of a partner, the surviving partners shall have the option to purchase *258 the interest of the deceased partner in the partnership at its then appearing book value, as shown by the books of the partnership kept in accordance with their regular custom, which option shall exist for a period of thirty (30) days after the appointment of a qualified legal representative of the estate of the deceased partner. If the option herein provided for is not exercised, then the surviving partners shall promptly apply to the State of Tennessee for a charter of incorporation and transfer the assets of the partnership to the corporation so created in exchange for the common stock of the corporation, and the common stock of the corporation so received in exchange for the assets of the partnership shall be delivered to the partners (including the estate of the deceased partner) in proportion to their interests in the partnership. "16. In the event of the dissolution of the partnership by lapse of time or otherwise, a full and general account in writing shall be had in the manner provided for the taking of the general annual account; the assets of the business shall be liquidated by the partner designated; the capital contributed by each partner repaid, the profits distributed *259 and the business terminated. "17. This contract may be terminated by any partner at any time by such partner giving six months' notice of his intention to terminate the partnership at the conclusion of such six months' period. In the event of termination by any partner under this provision, the remaining partners shall have the right to purchase the interest of such terminating partner by paying to such terminating partner the amount of his capital investment, together with his share of the profits of the business, as determined at the time the dissolution notice takes effect. The remaining partners, if they desire to exercise the option herein granted, shall notify the terminating partner of their intention so to do within thirty days after receiving said notice of termination and shall pay the terminating partner the purchase price due such terminating partner within thirty days after the time fixed for terminating. In the event the remaining partners do not so notify the terminating partner within said period, or in the event the remaining partners do not make the payment herein provided within the time provided, the partnership shall forthwith be dissolved and liquidated as *260 hereinabove provided. "18. The partnership shall not commence business until January 1, 1943, except that it may enter into contracts to be effective as of January 1, 1943. "IN WITNESS WHEREOF, the parties have executed this agreement the day and year first above written." At the time she executed the foregoing instrument, and at all times thereafter, the only capital which Mrs. Cole had invested in Cole & Company was the transfer from her husband, the petitioner, of the $36,000 interest in the assets of the firm, and undistributed profits allocated to her on books of the firm. On January 1, 1943, Cole & Company was operating five drug stores, three of them located in Knoxville, one in Maryville and one in Kingsport, Tennessee. Between January 1, 1943, and December 31, 1945, two new stores were opened, one in Bristol and one in Johnson City, Tennessee. The leases on these new stores were executed on behalf of Cole & Company by the petitioner, Mitchell and Mrs. Cole. Prior to January 1, 1943, Mrs. Cole had no separate estate and no income. She had no business experience other than that obtained through her contact with her husband's drug business during the years of their *261 marriage. She had attended the University of Kentucky before her marriage but had left school before graduating in order to marry the petitioner. She was not a pharmacist. The petitioner and Mitchell continued to devote full time to the business of Cole & Company during the taxable years in question and performed substantially the same services as had been rendered by them during all the years prior thereo. Both of them worked regularly at the office and at the Knoxville stores and visited the stores in other cities at frequent intervals. Mrs. Cole did not devote full time or any regular hours to the affairs of the partnership. She "shopped" each of the stores located in Knoxville for an hour or so about once a week. Her checkup had to do with sanitation, the personal appearance and cleanliness of employees in the soda fountain department and their sales ability, the type of merchandise offered for sale in the cosmetics department, and the color scheme and decorations of the stores. She did not make calls at the stores located outside the city of Knoxville. Her services during the years in question were substantially the same as those performed prior to the signing of the agreement *262 of January 1, 1943. She did not visit the office of Cole & Company every day or regularly during the years in question. She was not a bookkeeper or stenographer and was not familiar with any kind of office work. She had no office or desk set aside for her use at the office of the firm, and many of her discussions of business affairs were with the petitioner in their home. During the taxable years in question petitioner and Mitchell managed and controlled the affairs of the partnership in the same manner as in prior years. The petitioner was the dominant figure in the business and was largely responsible for its success. After January 1, 1943, petitioner, Mitchell and Mrs. Cole were authorized to write checks on the bank account maintained by Cole & Company. At times, when both petitioner and Mitchell were out of the city, Mrs. Cole signed checks on behalf of the business. The bank was advised that she was a partner and she was listed as such in Dun & Bradstreet. Partnership returns were filed by Cole & Company for the calendar years 1943, 1944 and 1945, showing net income of $119,394.83, $144,895.39 and $133,181.51, respectively. The income so reported for those years was *263 allocated on the books of the firm, as follows: Year
Petitioner
Mitchell
Mrs. Cole
1943
$ 55,910.18
$29,011.19
$ 34,473.46
1944
67,630.24
34,978.32
42,286.83
1945
62,246.54
32,237.27
38,697.70
$185,786.96
$96,226.78
$115,457.99 The above amounts include salaries of $500 per month for the petitioner, $300 per month for Mitchell and $100 a month for Mrs. Cole. The books of the firm also show withdrawals from Cole & Company by petitioner, Mitchell and Mrs. Cole, as follows: Year
Petitioner
Mitchell
Mrs. Cole
1943
$ 40,571.78
$16,541.76
$18,777.91
1944
52,260.52
21,308.13
20,050.92
1945
60,170.78
27,662.48
29,568.24
$153,003.08
$65,512.37
$68,397.07
The amounts withdrawn by Mrs. Cole during that time were used as follows: 1943
1944
1945
Total
Payment of U.S. income taxes
$17,945.73
$15,866.88
$26,966.21
$60,778.82
Personal expenditures for trips, support of parents, etc.
165.00
300.94
1,934.93
2,400.87
Purchase of bank stock
3,216.00
3,216.00
Payment of premiums on life insurance policies on life
of petitioner, - beneficiary, Mrs. Cole
667.18
667.10
667.10
2,001.38
Total withdrawals
$68,397.07
*264 During the years in question Mrs. Cole managed her household, supervised the care of two small children, and engaged in some social activities. She employed one and sometimes two domestic servants. She maintained her own personal bank account and controlled withdrawals therefrom. Since January 1, 1946, Cole & Company has again been incorporated and the business since that time has been conducted in corporate form. Opinion LEMIRE, Judge: The principal question in this case is whether or not during the years 1943, 1944 and 1945, Monica M. Cole was a partner with her husband, Robert H. Cole, and Robert F. Mitchell, in the conduct and operation of the firm of Cole & Company. The petitioner contends that Monica M. Cole invested capital originating with her in the business of Cole & Company, made substantial contributions to the control and management of the business, and performed other vital services, and has therefore met all the requirements for a valid husband and wife partnership as set forth in the case of Commissioner v. Tower, 327 U.S. 280. The respondent contends that she furnished no capital originating with her, made no substantial contribution to control *265 and management and performed no vital services in the business, and therefore, for income tax purposes, was not a partner during the taxable years in question. We think the facts as shown in the evidence support the respondent's contention. In the Tower case, supra, the Court said: "There can be no question that a wife and husband may, under certain circumstances, become partners for tax, as for other purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of those things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws." The services which Mrs. Cole rendered to Cole & Company during the years in question were not vital in character and *266 did not contribute materially to the income realized by the firm. She did not to any material extent participate in the control and management of the firm as a partner. Esther Rosenberg, 7 T.C. 73. The business was at all times under the management and direction of the petitioner and Mitchell. Mrs. Cole did not at any time invest in the business any capital originating with her. Commissioner v. Tower, supra.The formation of the alleged new partnership on January 1, 1943, did not alter the conduct of the business of Cole & Company or change the economic interest of either the petitioner or Mitchell. Except for the sums withdrawn for the payment of federal income taxes, substantially all of the profits allocated to Mrs. Cole on the books of the firm remained in the business. We therefore find that Mrs. Cole was not a bona fide partner for income tax purposes in Cole & Company during the taxable years 1943, 1944 and 1945. The alternative question raised by the pleadings and petitioner's brief is disposed of by our ruling on the principal question, except as to whether or not Mrs. Cole was entitled to remuneration as an employee for services rendered to *267 the firm. The evidence shows that Mrs. Cole did, from time to time during the entire three-year period here involved, render some service to the firm. Although the respondent contends that these services were negligible and should be accorded no value in determining the distributable income of the partnership, the brief filed in his behalf herein states: "If, however, the court should feel that these services were worth something it is submitted that the best yardstick of their value can be found in the partnership agreement which set Mrs. Cole's salary at $100 per month." In view of the foregoing, we find that Mrs. Cole was entitled to remuneration for services rendered at the rate of $100 per month during the taxable years involved. This was the amount which appears to have been credited to her as salary on the books of the firm and the evidence does not show that she was entitled to more than that amount. Decisions will be entered under Rule 50.